STATE v. JAMES MULLEN.

In a capital case it is competent for the State to show the disqualification of a juror by interrogating the juror himself as to any conscientious scruples he may have against inflicting the punishment of death.

The Article of the Constitution which requires prosecutions to be by indictment or information, does not prevent the Legislature from prescribing the forms of such instruments.

The definition of the offence of murder, as known under the common law of England, is the true definition of the crime of willful murder, the punishment of which is provided for by the first section of the Act of the Legislature of 1855, relative to crimes and offences.

If A threatens to take the life of B, or to do him great bodily harm, and B being informed of the threat, arms himself for the true and sole purpose of self-protection, and the parties subsequently meet without design, and A draws a deadly weapon and approaches B with the apparent intention to assault him with it, and B believes that he is in danger of his life or great bodily harm, and has no way of avoiding his adversary, advances upon him and kills him, the killing is justifiable in self defence.

But if A threatens B with personal violence, and the threat is communicated to B, and B thereupon arms himself with a deadly weapon, and meeting A kills him, while A is not making any hostile demonstration against B, the killing is willful, deliberate, malicious, and is murder.

Voluntary drunkenness, when no provocation has been given, furnishes no excuse for the act of killing another.

APPEAL from the First District Court of New Orleans, *Hunt*, J.
E. W. *Moïse*, Attorney General, for the State.   T. J. *Durant*, for the appellant.

MERRICK, C. J.  The accused having been convicted of the murder of one *James McGlone*, and sentenced to suffer the penalty of death, prosecutes this appeal.

He relies for a reversal of the judgment upon several supposed erroneous rulings of the District Court.

I. The first which he presents to our consideration is contained in a bill of exception taken to the interrogatory propounded by the Attorney General to the two jurors, *James Bradly* and *H. Collier*, " whether they had conscientious scruples against finding a verdict which might result in the death of the prisoner" ?

The counsel for the accused does not controvert the right of the State to show *aliunde* the incompetency of the jurors in this respect, but contends that the question relates to a matter of conscience, for which the juror is not responsible nor compelled to answer in a court of justice; that virtually, the question appeals to the juror's conscience to ascertain whether he approves of the laws of his country and is calculated to bring him into discredit and contempt with his fellow-citizens.

The conscientious scruples against inflicting the punishment of death, is a good ground of challenge to a juror in a capital case, is now too well settled to be doubted.  See *State* v. *Kennedy*, 8 Rob. 594; *State* v. *Melvin*, 11 An. 536; *State* v. *Costello*, 11 An. 284; *State* v. *Nolan*, 13 An. 276.

The general rule in regard to evidence is, that the best evidence of which the nature of the case admits, ought to be required.  The juror, beyond all question, has a more certain knowledge of the condition of his belief, and can enlighten the court on that subject, better than any other person.  Why should not the court apply to the juror himself to ascertain the condition of his mind precisely as it does where he is suspected of partiality or prejudice ?

It is said, because it will degrade the juror and because it is a matter of con-

science and belief beyond the control of the juror, about which he ought not to be questioned.

The first of these objections appears to us to be unfounded in fact. We doubt whether it would produce any effect upon the juror in public estimation.

In respect to the other objection, it is true that the objection to disqualify a witness on the ground of a want of a religious faith, ought to be proven *aliunde*. But then the rule may have originated in the supposition, that if the witness were really unworthy of evidence on account of his atheism, he ought not to be trusted to declare what his religious faith is. That the party who makes a charge, carrying with it some degree of odium, ought to be held to be consistent himself, and required to prove his charge *aliunde*.

But the question propounded by the Attorney General to the jurors in this case, does not assume that they are wanting in a religious belief, or a respect to the laws of the land, but simply inquires, whether there is any mental obstacle which will prevent an impartial discharge of their duties as jurors in the particular case for which they are summoned. Moreover, it would 'occasion great inconvenience to establish the rule contended for, and a formal objection, supported by the oaths of other witnesses, would be much more objectionable to the feelings of the jurors, than to submit the question at once to the juror himself. If the juror does not object to answer, the accused has but little reason to complain, because the State has adduced the most satisfactory evidence on the point to be decided. See *People* v. *Damon*, 13 Wendall, 351; *State* v. *Jewell*, 3 Rob. 583; Main State Reports, *Pierce* v. *State*, 13; N. C. 537, 556; *Clore's case*, 8 Grattan, 606; *Gross* v. *State*, 2 Carter's Ind. 329; *Jones* v. *State*, 2 Blackf. 475; *Fletcher* v. *State*, 6 Humph. 249; *U. S.* v. *Fries*, 3 Dall. 517; *Com.* v. *Knepp*, 10 Pick. 480, note—for cases where the juror was interrogated.

II. It is next objected, that the indictment does not show that the deceased died within a year and a day after the wound was inflicted, as required at common law. The indictment is framed as required by the third section of the Act of 1855, p. 172, and charges, that on the 28th day of July, 1858, the prisoner, at the parish of Orleans, &c., did feloniously, and of his malice aforethought, kill and murder one *James McGlone*. The first paragraph of the third section of the Act of 1855, it is true, declares, that in an indictment for murder or manslaughter, it shall not be necessary to set forth the manner or the means by which the death of the deceased was caused, but we think this special provision does not limit what immediately follows, wherein the lawgiver declares: That " it shall be sufficient in every indictment for murder, to charge that the defendant did feloniously, willfully, and of his malice aforethought, kill and murder the deceased." The indictment having followed the statute is sufficient.

If the prisoner killed the deceased on the 28th day of July, 1858, he must, of course, have died the same day. The Article of the Constitution, which requires prosecutions to be by indictment or information, does not prevent the Legislature from prescribing the forms of such instruments. It only means that the charge against the accused shall be preferred by a Grand Jury in the form of an indictment, or in an information to be filed by the proper officer. Art. 103 Const.

III. The second section of the Act of 1855, p. 130, which declares that there shall be no crime known under the name of murder in the second degree, and authorizes the jury to find the prisoner guilty of manslaughter, does not confine the crime of murder to cases where the homicide is perpetuated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated

killing, or which shall be committed in the perpetration or attempt to perpe-
trate any arson, rape, robbery, or burglary, as was provided by the Act of July
3d, 1805, but leaves the definition of the offence as defined and known under the
common law of England. The first section of the Act of 1855, is almost a lite-
ral reênactment of the third section of the Act of 23d of January, 1805. It
provides, that whosoever shall commit the crime of willful murder, on conviction
thereof, shall suffer death. Act of 1855, p. 130 ; 2 Martin's Dig. 228 ; Bullard
& Curry, 242.

By the Act of 1805, still in force, it is provided, that all crimes, offences and
misdemeanors, shall be taken, intended and construed, according to and in confor-
mity with the common law of England. To ascertain, then, what constitutes the
crime of willful murder, we must have recourse to writers on the common law.
The District Judge did not, therefore, err in refusing to charge the jury, that
the word " willful," was used in the statute in the sense of " premeditated," and
that the Legislature intended to modify the crime as known at common law.

IV. Neither can we say that he erred, to the prejudice of the accused, on the
two other points, 5th and 6th, requested by the counsel for the accused, to be
given in charge to the jury. We will copy the charge requested and charge as
given.

The Judge was requested to charge, 5th : " That if the jury find from the evi-
dence, that there had been treats of personal violence by the deceased towards
the prisoner, which had been communicated to the prisoner before the killing,
and the jury think that these threats were sufficient to cause *Mullen* to think
that *McGlone* was about to assail his life, or thought that his life was in danger,
then, in law, there was no malice in the prisoner and he cannot be found guilty
of murder."

The Judge said : " The charge asked for on this point, is not sufficiently dis-
tinct. The court charges, if *McGlone* threatened to take *Mullen's* life, or to do him
great bodily harm, and *Mullen* was informed of the threat, and thereupon armed
himself for the true and sole purpose of self-protection, and *McGlone* and *Mul-
len* subsequently met, without design, and *McGlone* drew a deadly weapon and
approached *Mullen*, with the apparent intention to assault him with it, and *Mul-
len* believed he was in danger of his life, or great bodily harm, and had no way of
avoiding his adversary, and advanced upon *McGlone* and slew him, and the jury
are satisfied of these facts, and are of opinion that *Mullen* acted upon a *bona fide*
reasonable ground of apprehension as stated, then the killing was justifiable in
self-defence, and the jury are bound to acquit the defendant. But if *McGlone*
threatened *Mullen* with personal violence, and assault and battery, or great bodi-
ly harm, and the threat was communicated to *Mullen*, and *Mullen* thereupon
armed himself with a deadly weapon and met *McGlone* and slew him, while *Mc-
Glone* was not making any hostile demonstration against him, the killing was
willful, deliberate and malicious, and is murder."

The 6th point requested to be given in charge to the jury was : " That if the
jury believe from the evidence, that *Mullen*, when he committed the act with
which he is charged, was intoxicated, they must give due weight to this fact in
determining not only the question of premeditation, but also in juging whether
the prisoner acted from previous malice or from sudden impulse, and they must
also judge whether this intoxication did not excite a belief in the mind of the
prinsoner, that he was about to be attacked, and that any of these circumstances
will go to do away with the legal presumption of malice."

The District Judge charged on the 6th point, that : "The instruction asked for, refers to a doctrine on the subject of murder, heretofore partly considered," (viz, in defining willful murder,) and to be further treated of by the court, and is understood to look to the killing as resulting immediately from a state of voluntary intoxication.

"Voluntary drunkenness cannot excuse from the commission of a crime; and an offender, under the influence of intoxication, can derive no privilege from a madness voluntarily contracted, but is answerable to law, equally as if he had been in the full possession of his faculties at the time. In general, insanity is an excuse for the commission of every crime, because the party has not the possession of that reason which includes responsibility; an exception is, when the crime is committed by a party while in a fit of intoxication, the law not permitting a man to avail himself of the excuse of his own gross vice and misconduct, to shelter himself from the legal consequences of such crime. 5 Mason, 29, J. Story."

"Drunkenness may be taken into consideration in cases where, what the law deems sufficient provocation, has been given, because the question is, in such cases, whether the fatal act is to be attributed to the passion of anger, excited by the previous provocation, and that passion is more easily excited in a person when in a state of intoxication, than when he has the full possession of all his faculties. But where no such provocation has been given, drunkenness furnishes no excuse."

"A killing by the prisoner under a belief springing immediately from his voluntary drunkenness, that he was about to be attacked, when that belief was entirely unfounded in fact and in reason, and when the jury are of the opinion that he had no reasonable ground for the belief, is not a circumstance that can go to do away with the legal presumption of malice." See Bishop's Criminal Law, sec. 300, p. 238.

V. The seventh point excepted to, has already been considered by us under the second head in this opinion. We discover no error in the charge, even if the validity of the indictment be considered a proper matter to be given in charge to the jury.

Our examination of this case has not enabled us to discover any error of law to the prejudice of the prisoner.

The judgment must be affirmed.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be affirmed; and that the defendant and appellant pay the costs of the appeal.