No. 1721.—ALFRED DUPERIER *v.* B. F. FLANDERS et al.

A sale of cotton for Confederate notes, as the consideration is null, its enforcement by the courts of this State is prohibited. Constitution, article 127. This nullity extends to the transferees of the written act of sale of the cotton.

A party claiming the right to control property by virtue of possession must show that he acquired possession in a lawful manner. The unlawful use of force in gaining possession will not avail him.

A judgment of the lower court will not be amended between the appellees. 20 An. 307.

APPEAL from the Third District Court of New Orleans. *Emerson, J. J. S. Whitaker,* for plaintiff and appellee. *Samuel R. & C. L. Walker,* for intervenor, Talbert, appellant. *Charles S. Rice,* for Godwin, intervenor and appellee.

HOWE, J. The questions of law in this case are quite similar to those in O'Donnell *v.* Burbridge & Co. 20 Ann. 37.

On the tenth July, 1863, Silas Talbert sold to Isaac Levy & Co., of Alexandria, for Confederate money, one hundred bales of cotton in the seed, on the plantation of the former on Bayou Bœuf, to be ginned, baled and delivered to the vendees when called for—the latter furnishing bagging, rope and twine. Levy & Co. transferred their rights to H. M. Keary for Confederate money, and, for the same consideration, Keary transferred to Joseph Onterdick, who, in turn, made a transfer to the plaintiff for notes of Louisiana banks.

In November, 1865, about forty-nine bales of cotton were delivered to the plaintiff by Talbert, but the latter declined to deliver any more. The plaintiff then appears to have conceived the plan of having the cotton seized by one Burbridge, a supervising special agent of the treasury of the United States. We are informed by a letter of plaintiff that this seizure was made and the cotton directed to be consigned to the special agent "for adjudication," but we are not informed from what source the agent derived his authority to adjudicate private controversies of this nature. However this may be, the twenty-three bales of cotton which form the subject of this controversy were seized, in the seed, on the plantation of Talbert, in January, 1866, by an assistant treasury agent named McLean, who came with a corporal and a file of soldiers, who took possession of the premises and commenced ginning the cotton. "They baled," says the principal witness on this point, "forty-four bales of cotton. These

forty-four bales were then removed by McLean or one O'Donnell, and taken to Holmesville and placed in charge of McStarring for shipment by McLean.    The twenty-three bales were ordered to 'be shipped to F. J. Herron"—the plan of consignment to the treasury agent "for adjustment" being apparently abandoned as soon as the property had been forcibly wrested from the possession of Talbert.

At this point it is stated that the cotton was given over by McLean to an agent of the plaintiff, who thus obtained what the agent in his testimony chooses to denominate "constructive possession" of it. Such possession must have been purely constructive, for we next find the twenty-three bales in the hands of the defendant, Flanders, agent of the treasury, who would have returned them to Silas Talbert, if he had not been prevented by the writ of sequestration obtained by plaintiff when this action was instituted.

Flanders answered by a general denial, and an averment that he was in possession in his official capacity, and prayed that Talbert might be made a party.    Talbert being cited, filed his answer, and also his exceptions, averring that the property was brought within this district by fraud, collusion and violence, and further alleging that the pretended contracts of purchase and transfer hereinbefore mentioned were null and void, the consideration being Confederate money.

D. R. Godwin intervened, claiming a privilege on the cotton, or its proceeds, for disbursements made by him in expenses and charges on said cotton.

The exceptions were cumulated with the merits, and the cause was tried before a jury, who rendered the following verdict:

"Verdict for plaintiff; 23-73 *allowed intervenor when a correct bill is made out.*"

This finding was recorded, and judgment rendered in favor of plaintiff for the cotton claimed; but the claim of the intervenor was dismissed.

The defendant Talbert alone appealed.    The intervenor, Godwin, as appellee, has filed answer in this court, claiming, by way of amendment, a judgment for the amount awarded him by the inscrutable verdict of the jury.    The rules of practice do not permit us to consider his claim, since he has not himself appealed.    Fields *v.* Creditors, 11 An. 545; Coleman *v.* Haight, 14 An. 564.

As between the plaintiff and the defendants we are of opinion that the verdict and judgment were erroneous.    The plaintiff had no better title to the cotton than Onterdick—the latter had no better title than Keary, and Keary no better than Isaac Levy & Co.    The title of Levy & Co. and of Keary was based upon the consideration of Confederate treasury notes, and we cannot recognize its validity.    See case of Cousin *v.* Abat, just decided, and cases there cited.

The cotton was never delivered, in any way, by Talbert to plaintiff,

Alfred Duperier v. B. F. Flanders et al.

and the plaintiff cannot be deemed to have gained any lawful advantage through the trespass and spoliation of McLean and his file of soldiers.

For the reasons given, it is ordered and adjudged that the judgment appealed from, so far as it dismisses the claim of the intervenor Godwin, be affirmed—that in all other respects it be avoided and reversed. It is further ordered that the demands of the plaintiff be rejected with costs in both courts, and that the property sequestered herein be delivered to Thomas L. Talbert, testamentary executor of Silas Tal-, bert, now deceased.

Rehearing refused.