(55 South. 750.)

Nos. 18,384, 18,409.

EGAN v. HOTEL GRUNEWALD CO., Limited, et al.

(Oct. 17, 1910. On the Merits, May 22, 1911. Rehearing Denied June 30, 1911.)

*(Syllabus by the Court.)*

1. ADJOINING LANDOWNERS (§ 1*)—LIABILITY FOR DAMAGES.

The owner of adjoining property is responsible in damages for every act of his which causes damage to his neighbor. C. C. arts. 667, 2315, 2316, 2317; Heine v. Merrick, 41 La. Ann. 207, 5 South. 760, 6 South. 637.

[Ed. Note.—For other cases, see Adjoining Landowners, Cent. Dig. §§ 1–6; Dec. Dig. § 1.*]

2. ADJOINING LANDOWNERS (§ 1*)—INJURIES TO THIRD PERSON—LIABILITY OF CONTRACTOR—JOINT TORT-FEASORS.

The contractor who executes the work for the owner is bound in solido with him, when they are joint tort-feasors.

[Ed. Note.—For other cases, see Adjoining Landowners, Cent. Dig. §§ 1–6; Dec. Dig. § 1.*]

3. INDEMNITY (§ 9*)—CONTRACT—CONSTRUCTION.

Under a contract to hold the contractor harmless for any damages arising from the execution of the contract, the owner will be condemned for the amount the contractor may have to pay in damages resulting from the execution of the contract.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 16; Dec. Dig. § 9.*]

4. WITNESSES (§ 28*)—EXPERT WITNESSES—COMPENSATION.

Act No. 19 of 1884 authorizes the calling of witnesses to make and testify to scientific and professional examinations on the trial of the cause, and it provides for their compensation. Stern v. Lanng, 106 La. Ann. 738, 31 South. 303.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 65, 66; Dec. Dig. § 28.*]

*(Additional Syllabus by Editorial Staff.)*

5. APPEAL AND ERROR (§ 325*)—PARTIES.

On appeal by plaintiff, she had a right to make all parties interested in the judgment parties to the appeal, and one a party to the action is not entitled to dismiss the appeal; plaintiff having a right to an appeal as to all the issues raised in her demand and against all parties brought into the case on that demand.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1810–1813; Dec. Dig. § 325.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Mary L. Egan against the Hotel Grunewald Company, Limited, and Charles Sicard. From the judgment, plaintiff and the Hotel Grunewald Company, Limited, appeal. Reversed in part, and amended in part and affirmed.

Carleton Hunt and Charles Louque, for appellant Egan. Dinkelspiel, Hart & Davey, for appellant Hotel Grunewald Co. W. L. Hughes, for appellee Chas. Sicard. Saunders, Dufour & Dufour and H. Moore, for appellee American Bonding Co.

On Motion to Dismiss Appeal.

NICHOLLS, J. On August 8, 1910, the Hotel Grunewald Company filed in this case a motion to dismiss the appeal taken herein by the plaintiff, on the ground "that the plaintiff was not entitled to an appeal as against this respondent."

Respondent prayed that in due course this appeal may be dismissed, with costs.

On July 11, 1910, the plaintiff filed a petition in the district court in suit No. 81,896 therein, in which she alleged that there was error to her prejudice in the final judgment rendered therein signed on the 5th day of May, 1910; that she desired to take a devolutive appeal from said judgment. She prayed for a devolutive appeal therefrom, and that the following named parties be cited to answer the appeal. The Grunewald Hotel Company, Limited, through Louis Grunewald, president, Charles Sicard, Alfred Hiller & Co., through their proper officer, the American Bridge Company of New York, through Moise de Leon, its agent or representative, residing in New Orleans, the Expanded Metal Fire Proofing Company, through their attorneys, or Secretary of State John T. Michel, and petitioner prays for all general relief. The court granted the appeal prayed for, and directed that citations issue as prayed for.

At the time this devolutive appeal was taken, the Grunewald Hotel Company had taken on motion a suspensive appeal from the same judgment in the matter bearing the number 18,384 on the docket of this court.

In the matter of the suspensive appeal taken by the Grunewald Company, Limited, Miss Egan answered, praying that the judgment be amended in her favor by increasing the amount awarded her against the appellant.

The suit No. 81,196 in the district court from the judgment in which both parties were taken was one brought by plaintiff to recover damages in solido against the Hotel Grunewald Company, Limited, and Charles Sicard, for damage done to plaintiff's building on Canal street, near the Grunewald Hotel building. In that action she obtained judgment against the Hotel Grunewald, but by the same judgment plaintiff's demand against the other defendants was dismissed as were the plea of prescription, and a rule taken by plaintiff in February, 1910, for the payment of the fees of experts. From that judgment the Grunewald Company appealed suspensively as has been stated, and shortly after (July 11, 1910) the plaintiff appealed devolutively from the same judgment. The transcript filed on the 9th day of July in the matter of the suspensive appeal of the Grunewald Company brings up the entire record of the case. The appeal in No. 18,-383 has been set down for trial on October 21st, that in No. 18,409 (plaintiff's devolutive appeal) on the day following (October 22d).

Suggesting the above facts, the plaintiff has moved the court to deny the motion made to dismiss the appeal, and to consolidate the two appeals and hear and decide them at the same time; they being really one single case or branches of the same case.

The plaintiff refers the court to C. P. 888–890; 1 Hennen's Digest, p. 70, No. 18, verbo appeal; Fields v. His Creditors, 11 La. Ann. 546; Jamison v. Barelli, 20 La. Ann. 454, 455; Lallande v. McRae, 16 La. Ann. 193; Succession of Juan de Egana, 18 La. Ann. 265; Duperier v. Flanders, 21 La. Ann. 720; Coleman v. Haight, 14 La. Ann. 570; Converse, Kennet & Co. v. Steamboat Lucy Robinson, 15 La. Ann. 433.

Grunewald Hotel Company, Limited, refers the court to Williams v. Zengel, 117 La. 614, 42 South. 157.

It is not and cannot be disputed that the plaintiff, Miss Egan, had the right to an appeal from the judgment rendered by the district court (C. P. 564), and that such right existed from one year computed from the day on which the final judgment was rendered (C. P. 593).

[5] When she did appeal, it was her duty to make all parties interested in the judgment made parties to the appeal. This she had to do either by petition or by motion, and this she has done in the present case by petition.

All parties in interest have been cited and all are now before the court. No one complains of the present situation except the Hotel Grunewald Company, Limited, through an ex parte application in which it assigns no possible injury to itself by having been made and being a party to the appeal. Had the plaintiff not made it a party, the other parties to the litigation may have had grounds of complaint for its being left out. We are not called on on this motion to discuss and dispose of questions which might arise from its absence as a party to the appeal nor anticipate what the judgment to be rendered on the appeal will be.

Plaintiff had the right to an appeal as to all the issues raised in her demand and against all the parties brought into the case on that demand, and to have all its demands properly decided.

Plaintiff in this case has done everything which she was called upon to do. It is not pretended that she has done anything or omitted to do anything by reason of which she has forfeited any right. The Grunewald Hotel Company, Limited, does not pretend that plaintiff has gained any advantage over it by taking the present appeal, or that she has gained anything as against it which she would not have had before.

She is entitled now, as she has always been entitled to have, on the appeal taken by her to have the Supreme Court on rendering judgment in the case pronounce the judgment which the lower court should have rendered. It is right and proper that two appeals should be consolidated and heard together so all the issues in this case should be passed upon at the same time.

The motion to dismiss is not well grounded. The motion is denied. The two appeals are hereby ordered to be consolidated and heard together on the 21st day of October, 1910.

## On the Merits.

SOMMERVILLE, J. The Hotel Grunewald Company, Limited, the principal defendant, is and has been for many years the owner of the property fronting in Baronne street in the square bounded by Canal, Common, and University Place, in this city, where it conducted a large hotel. Some few years since it acquired other property in the same block, in the rear of its former building, and fronting in University Place, upon which it has erected one of the largest buildings in the city, as an annex to its hotel. For this purpose it contracted with several contractors for executing the plans chosen for the erection of this new edifice. Several of these contractors have been made defendants with the hotel company in this suit for damages by plaintiff for alleged loss and injury occasioned to plaintiff's property, which is in the same square, resulting from the excavating, pile driving, and other works engaged in by them in executing their several contracts.

The hotel is 14 stories high, with a basement, in which is placed a swimming pool. It is built upon 2,675 piles, making a displacement equal to 260,000 cubic feet of wood. The piles are 60 feet long, and the excavation was 10 to 14 feet deep.

Plaintiff's property is improved, and it fronts in Canal street. It is separated from the Annex by a common alley, some 12 feet in width, with an open drain on the upper side of the alley, adjoining defendant's property. She alleges, in her petition, filed February 28, 1907, that she and her property have been injured by defendants in the sum of $6,906, specified as follows: For temporary repair to building, $718; for rebuilding walls, $4,880; for loss of rent, $700; for architect's fees, $608, reduced in petition May 6, 1907, to $547. In her supplemental petition she seeks to increase her claim for rebuilding walls from $4,880 to

$5,470, to which defendants objected. June 4, 1907, and January 3, 1910, plaintiff filed other petitions in which she sought to further raise her claim for restoring her building from $4,880 to $7,500, to which defendants also objected. She also claimed increased architect's fees. She claimed $312 as fees of architects to be used as witnesses on the trial of the cause. This last claim must await the termination of the suit. She also claimed $824.20 repaid by her to her former tenant, Mrs. M. Reynolds, October 19, 1909, under a judgment declaring that Miss Egan must return the rent received by her, the landlady, in error from her tenant, in suit No. 81,045, Civil District Court. Reynolds v. Egan, 123 La. 294, 48 South. 940.

In her petition plaintiff charges that these several defendants confederated and combined to trespass upon her property, and to wrongfully and tortiously injure and destroy it. She then proceeds to particularize the injuries and the methods pursued by defendants. The evidence does not sustain these allegations as to all of the defendants. It shows that the damage complained of resulted from the excavation, pile driving, and sheet piling which were done by C. Sicard, and not by the other contractors. The judgment dismissing the suit as to the latter is correct, and it will be affirmed.

Pleas of prescription of one year were filed to plaintiff's claims by the hotel company and Mr. Sicard. These pleas were properly referred to the trial of the case on the merits.

Mr. Sicard had two contracts with the hotel company for excavating, driving piles, and sheet piling. The first of date July 1, 1905, covering those piles, indicated on a blue print prepared by H. C. Coch & Son, architects of Milwaukee, Wis., located on the plot toward the Tulane Theater, and the second contract, which was of date March 10, 1906, covering those piles to be driven in the plot toward Canal street, nearer to Miss Egan's property. The first contract is not the basis of plaintiff's suit. When counsel for Mr. Sicard asked Mr. Sicard who was a witness for himself: "When your first contract was being carried out there was some damage done to the Tulane Theater was there not?" and counsel for the hotel company objected on the ground of irrelevancy, he stating:

"We are not trying any damage to any building except the building of Miss Egan, and it is shown by the petition and the documents in evidence that that damage was not alleged to have been caused until after the beginning of the second contract."

And when Mr. Sicard attempted to refer to the first contract, his counsel said: "Well never mind—the second contract?"

Mr. Sicard testifies that the plan for driving piles was erroneously drawn, that it provided for two to three feet more ground space than actually existed, and that under direction of Messrs. Toledano & Wogan, architects for the hotel company, "the sheet piling as they are driven, as they stand yet —they are still there—were driven exactly against the last brick offset" of the rear foundation of Miss Egan's property. The excavating of earth some 10 to 14 feet and the driving of numerous 60 feet piles must have in the nature of things displaced the earth surrounding the work; the witnesses testify that such was the effect, Mr. Sicard, defendant, says:

"I was referring to the movement of the earth on the adjoining property. The property was something like 15 feet higher than the excavations, the bottom of the excavations; and, unless these walls were put in immediately so as to prevent seepage of water, and also quicksand, running through and under the bottom of the excavations, that these quicksands in running would displace the ground in the neighboring property, and in doing so would lower the ground, and cause the buildings standing on same to settle down."

Referring to the quicksand, he testifies:

"It extended over the whole surface at the bottom of the excavation, and it came up with the water. There was water continually running in, which we all understand is natural, and

this water in coming up in different parts at the bottom of the excavations would carry up quicksand, and form little hillocks. Some would be large and some small, and that would come up all the time; and besides that, in several instances the excavations had to be put down again on account of this quicksand coming up. That was after the excavations were complete. It had to be dug out again so as to place the concrete."

He was asked:

"Q. This condition would necessarily affect the Egan property, would it not? A. Yes, sir. Q. In your opinion? A. In my opinion; yes, sir. Q. With relation to the Egan property, where was this quicksand? A. It extended all around the excavations in every way. * * * Q. Did you see any water seeping through that crack (in the newly built retaining wall next to Miss Egan's property)? A. There was water continually coming through. Q. From beneath the Egan property? A. Yes, sir. Q. What would the result of that be on the Egan property? A. Naturally, the water in coming from the Egan property would wash away the ground or the earth from under the foundations, and, of course, it would settle down."

Mr. Wogan, the architect for the hotel company, corroborates Mr. Sicard's testimony as to results flowing from deep excavations and pile driving to neighboring property. They both testify to the existence of an open drain or ditch transferred by Mr. Wogan, the hotel company's architect, from the upper to the lower side of the common alley between the property of the plaintiff and that of defendant during the course of construction of the annex. Mr. Sicard says that the hotel company drained large amounts of water into this ditch. And Mr. Wogan testifies in part:

"Q. Did that gutter have any injurious effect on the foundations of the buildings adjoining? A. It certainly must have. It had no bottom. Q. Did the wall absorb the humidity and dampness? A. Yes, sir. Q. Did it have any effect on it, on the building? A. It must have. Q. Do I understand you to say that the water in that gutter softened the subsoil? A. I think it tends to do that. Q. And was creating, in your opinion, damage, or creating a cause of damage, did you say? A. Yes, sir. Q. And it was the water really that did it, wasn't it? A. No, sir; I did not say that it was the water that did it. I think it is one of the contributory causes. Q. When did you notice a movement of Miss Egan's property for the first time? A. I couldn't tell you exactly the date. * * *

Q. How far had the pile driving progressed? A. It was finished. Q. When you first noticed it? A. Yes, sir; pile driving and sheet piling had been finished. Q. What was the cause of the bulging or the getting out of plumb (of the newly built retaining wall)? A. Well, there was an external force shoving it. Q. On account of the pressure that came against it? A. An external pressure. Q. Where did that pressure come from? A. From the outside buildings. Q. Wasn't it from the foundation of the Egan building? A. I couldn't tell you sir. The pressure comes all around you know. Q. Well, it came from the side of Miss Egan's property? A. Yes, sir; from toward Canal street. Q. Well, what effect would that have, what effect would the giving of that wall have on the foundation of the Egan property? A. It would lower that. Q. It would lower the building? A. Yes, sir; I say, also, it would have disturbed, created a motion, there, made a movement."

These few quotations from defendants' testimony show conclusively that the tort or wrong complained of by plaintiff as resulting in injury to her property was the work performed by the hotel company, through its contractor, Mr. Sicard, under the contract dated March 10, 1906, which was finally completed on September 7, 1906, less than one year before the filing of this suit, February 28, 1907. The pleas of prescription of one year were properly overruled.

[1] That plaintiff's property has been damaged by acts of defendants in the manner and to the extent indicated in plaintiff's petition is not seriously disputed. The testimony to that effect is full and complete. We so declared in Reynolds v. Egan, 123 La. 311, 48 South. 940. The quantum of damages will now be determined. The record is large, and the oral and printed arguments discuss the testimony very fully.

The law requires that full restitution must be made by him who causes damages to another. Miss Egan is entitled to have her property restored, as nearly as possible, to the condition it was in prior to the acts of defendants, of which she complains. Heine v. Merrick, 41 La. Ann. 194, 5 South. 760, 6 South. 637; C. C. arts. 667, 2315, 2316, 2317.

Several estimates are in evidence as to the cost of work necessary for that purpose. Mr. W. W. Van Meter testifies that he is willing to do the work now in contemplation for $4,134. This is the lowest estimate found in the record, and it will be taken as the basis of the judgment of the court. It is the measure of damages which plaintiff has suffered through the acts and faults of defendants.

Plaintiff was compelled to make temporary repairs at an expense of $718, which will be allowed.

Architect's fees, $547, will not be allowed, as Mr. Van Meter's estimate appears to cover this charge.

The claim for loss of rent is well founded. In Reynolds v. Egan, 123 La. 314, 48 South. 947, "we say she (the lessee) had the right to cancel the lease, for the reason that the situation was not one calling for repairs to the building," but for a "reconstruction" of the same, and we therein decreed that "the right of plaintiff (the lessee) to recover rents paid since judicial demand from her lessor be reserved." But in the settlement or compromise between plaintiff and her tenant, which was offered in evidence, it does not appear clearly how much was for rent returned by Miss Egan. There is no other testimony as to the amount of rent lost or returned. This claim cannot therefore be allowed. A judgment of nonsuit will be entered as to this item.

The claim for $641.80, made in a rule to tax costs, for expert testimony by plaintiff, should have been made absolute in part. We said in Stern v. Lanng, 106 La. Ann. 738, 31 South. 303, Act 19 of 1884 provides for compensation, to be fixed by the court, where the testimony requires special study and experience, and the amount of compensation is in great part left to the judge.

[4] Plaintiff notified defendants by supplemental petition that she would introduce experts as witnesses on the trial of the cause.

The case required witnesses who had by special study and experience fitted themselves to give testimony concerning the matters involved; and it is right that they should be compensated. Some of the experts who testified did not appear on the trial of the rule to tax costs and submit themselves to an examination by defendants. The rule should have been made absolute for $351.35.

[2] The hotel company and Mr. Sicard were joint tort-feasors, and they are bound in solido to Miss Egan for the damages resulting from their wrongful acts.

[3] As the hotel company furnished the plans and specifications by which Mr. Sicard executed his contract to excavate, drive piles, and sheet pilings, and as it exercised control over him through its representatives or architects, and as it bound itself to indemnify and hold him harmless for damages arising from the execution of the contract in the terms following:

"The party of the first part (Mr. Sicard) shall not be responsible for any damages resulting from the execution of this contract, except that caused by the direct fault or negligence of himself or of his employés or workmen, and except that caused by, and directly attributable to, his doing the work in a manner different from that prescribed by the contract or directed by the architects.

"And the party of the second part (The Hotel Co.) hereby agrees and binds itself to indemnify and hold harmless the party of the first part against any loss or damages which may be sustained by him and through his undertaking, and not assumed by him hereinabove"

—there will be judgment in favor of C. Sicard and against the hotel company for the amount rendered against him in favor of Miss Egan. The claim of the hotel company against the American Bonding Company, the surety for C. Sicard, was properly dismissed.

It is therefore ordered that the judgment appealed from be reversed in part and amended so as to make the judgment in favor of plaintiff against the hotel company and C. Sicard in solido for $4,852.21, with $351.35 additional for experts' fees, to be taxed as costs.

.It is further ordered that Charles Sicard have judgment against the Hotel Grunewald Company, Limited, for $4,852.21 and costs, or so much of said amount as said Sicard may be called upon to pay under this judgment.

It is further ordered that there be judgment of nonsuit in favor of plaintiff on her claim for loss of rent against the Grunewald Hotel Company and Charles Sicard.

In all other respects let the judgment appealed from be affirmed.