Dr. David R. Womack, an ear and throat specialist, brings this suit against a former patient, Morris E. Burka, seeking to recover $435 as the balance alleged to be due for professional services. He alleges that from June 14, 1937 to April 14, 1940, he rendered services to defendant, including a very serious surgical operation known as a mastoidectomy which was performed on June 19, 1937, and that a proper charge for the services rendered amounted to $515 made up of $400 for the operation and $115 for more than sixty professional visits; that defendant has paid on account of the bills rendered, $80 and that there remains due a balance of $435.
Plaintiff avers that at the time of the performance of the operation, defendant was a minor but that on March 18, 1938, he was fully emancipated by judgment of the Civil District Court for the Parish of Orleans, and that since his emancipation he has made several payments on account of the indebtedness, and has written several letters acknowledging his obligation and promising to pay.
Defendant admits that the operation was performed and that the services were rendered but he contends that the amount charged is excessive. He avers that the arrangements for the operation were made by his uncle, Mr. Max Tobias, and that his said uncle was told by plaintiff that the charge for the operation would be very moderate, and was of the opinion that it would amount to about $200, which defendant says he is and has always been willing to pay. Defendant also contends that the professional visits were required in connection with the operation and were made necessary because of post-operative treatment, and that no additional charges should have been made therefor.
The testimony of plaintiff and of two other recognized otologists is to the effect that the operation which plaintiff performed was not an ordinary mastoidectomy but was a most serious operation for a condition known as petrous infection. These experts testified that operations for this condition are very rare and are most serious, and that the amount of the bill, $400, is the minimum which should be charged for such an operation.
The record shows, beyond any doubt whatever, that the subsequent visits for which charges were made were not in connection with post-operative treatment. The first visit for which such a charge was made was on December 7, 1937, about six months after the operation.
Defendant's uncle did not take the witness-stand but it was admitted that if he had done so he would have testified that Dr. Womack told him not to worry about the charge; that it would be very moderate. Dr. Womack denies this. Even if the doctor did make such a statement, surely he did not intend to give the impression that he would make no charge at all but merely that he would make the minimum charge usual for such an operation. The record shows that $400 is the minimum charge.
After the operation had been completed and the post-operative treatment had terminated, if the defendant found it necessary to continue to visit the plaintiff further charges were properly made therefor.
It is evident that defendant found no fault with the charges of plaintiff.
In April, 1939, long after his emancipation, defendant wrote to plaintiff, enclosing a check for $10 to apply on the account, and thanking plaintiff "for acting as you did in this matter."
In December, 1939, defendant wrote another letter to the plaintiff, enclosing another check in payment on account, and apologizing for "not making much headway" and stating that he would pay the bill in full "as soon as I get out of school and begin to make a little money."
On January 2, 1940, defendant again wrote to plaintiff acknowledging receipt of a bill for the balance due, stating that he realized this balance was $460 and that he hoped to pay larger amounts soon.
At sometime prior to January 10, 1940, defendant apparently asked the plaintiff for an explanation of the balance due for, after receiving an explanation, he wrote: "I *Page 304 
have received your letter explaining my account with you, and I certainly do appreciate your explaining this matter to me, enclosed is my check for $5.00."
Defendant admits that he wrote all of these letters, but he now contends that he was young and inexperienced and did not realize that the charges were excessive, but that his uncle at all times thought that they were too high.
In view of his repeated acknowledgments that the bills were fair, and that he intended to pay them, and because the evidence shows that, as a matter of fact, they were not at all excessive, we conclude that the trial court was correct in holding that the amount claimed by the plaintiff is due.
In determining what is a correct charge for professional services, there should be considered two things; first, the training and experience necessary and the seriousness of the treatment or operation; and, second, the ability of the defendant to pay. We do not mean that because a defendant may be a very rich man he may be required to pay an exorbitant charge, but we do mean that, where a defendant is shown to be well able to pay, the doctor should not be required to reduce his charge, and in fixing it, may take into consideration the fact that the patient has ample funds out of which to make the payment. The record shows that the defendant had inherited approximately $40,000 from the estate of his father.
In proving the correctness of his charges, plaintiff placed on the witness stand the two experts to whom we have already referred. They had been sitting in the courtroom during the entire trial and had heard all of the evidence. After the completion of the trial on the merits, counsel for plaintiff, on behalf of these two experts, took a rule on defendant to tax their fees as costs of court and asked that these fees be fixed at $50 for each. Counsel for defendant contended that these charges should not be taxed as costs of court for two reasons: first, because the testimony was not "expert evidence", and, second, because in support of the rule to tax their fees as charged the two experts did not, themselves, take the witness stand but merely submitted bills, each in the sum of $50.
Counsel contends that testimony of a physician or a surgeon to the effect that a charge of another physician or surgeon is correct is not, strictly speaking, expert evidence at all, and that it is not proper to charge as an expert's fee a charge made by such a witness for testifying because no special study or experience in any branch of science is necessary to give such testimony, and he calls attention to Act No. 19 of 1884, Sec. 1990, Dart's Revised Statutes, Vol. 1, reading as follows: "Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of the time employed and the degree of learning or skill required."
Counsel maintains that no special study or experience is necessary to enable a witness to testify as to the correctness of such a charge. He argues that any layman who has employed a doctor or a surgeon may testify as to what the charge made against him was and, from such experience, may testify as to what such charges should be. We cannot agree with him. It is true that any layman who has required the services of a physician or a surgeon may know what charge was made against him, and it is true too that any layman who has been so unfortunate as to require such services often may have acquired experience which will enable him to judge, with fair accuracy, just what charge will be made for any given services, but only one who has himself had experience in rendering the same kind of service or in performing the same kind of operation, or who has had experience in making charges therefor may be said to be capable of giving expert testimony on the subject. Where the bill of a doctor is questioned, the best evidence as to its correctness must be given by another doctor who has, himself, studied the same branch of science and who knows how serious may have been the condition of the patient, or how dangerous may have been the operation.
We conclude that the two witnesses gave expert testimony and that, therefore, their fees, as experts, should be taxed as costs of court, if properly proven. However, these doctors did not take the witness stand on the trial of the rule to tax costs and thus were not subjected to cross-examination. In Egan v. Hotel *Page 305 
Grunewald Co., 129 La. 163, 55 So. 750, 753, the Supreme Court refused to permit the taxing as costs of the fees of expert witnesses who had not taken the witness-stand in support of their respective charges, and who thus had not subjected themselves to cross-examination. The Supreme Court said: "Some of the experts who testified did not appear on the trial of the rule to tax costs and submit themselves to an examination by defendants. * * *"
In Cutitto v. Metropolitan Life Ins. Co., La.App., 172 So. 812, 813, we followed the rule laid down in the Egan case, and refused to tax as costs the charges of a doctor who had testified as an expert witness, saying: "* * * He did not appear and submit himself to cross-examination, but relied on the statement of counsel for plaintiff to substantiate his claim for an expert's fee."
We further said: "* * * It was settled by the Supreme Court, in Egan v. Hotel Grunewald Co., supra, that, where it is sought to tax as costs the fee of an expert, that expert is under the absolute necessity of appearing in person at the trial of the rule to tax costs in order that he may submit to cross-examination. * * *"
In the case at bar the experts merely presented their bills, which, through counsel for plaintiff, were offered in evidence.
We are unable to distinguish the facts here from those found in the Cutitto case, and we think that the principle followed there and announced in the Egan case is applicable here, and, accordingly hold that the fees of these experts cannot be allowed at this time.
However, we feel as we did in the Cutitto case that the rule should be dismissed only as in case of nonsuit, so that the question of the right of these doctors to be paid for their services as expert witnesses may possibly again be presented for consideration.
It is therefore ordered, adjudged and decreed that the judgment appealed from in favor of plaintiff and against defendant in the sum of $435, with legal interest, etc., be, and it is, affirmed at the cost of appellant, and it is further ordered, adjudged and decreed that the judgment on the rule to tax costs be, and it is, annulled, avoided and reversed, and that there now be judgment dismissing that rule as in case of nonsuit.
Judgment on main demand affirmed.
Judgment on rule to tax costs reversed.