(55 South. 657.)

No. 18,546.

WICHERS v. NEW ORLEANS ACID & FERTILIZER CO.

(May 22, 1911. Rehearing Denied June 26, 1911.)

(Syllabus by the Court.)

1. EVIDENCE (§ 95*)—BURDEN OF PROOF.

The burden of proof is on the plaintiff in an ordinary suit for damages.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 118; Dec. Dig. § 95.*]

2. NUISANCE (§ 49*)—EVIDENCE—SUFFICIENCY.

A plaintiff sustains the burden of proof when he shows that at the time his plants were destroyed and damage suffered, the defendant's factory was freely emitting fumes, gases, and acids, which are destructive of plant life, and that the wind was blowing the fumes, etc., towards his premises, some 900 feet distant, and that there was no other known agency of destruction existing in the vicinity.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 115–117; Dec. Dig. § 49.*]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Benedict M. Wichers against the New Orleans Acid & Fertilizer Company. Judgment for plaintiff and defendant appeals. Affirmed.

T. M. & J. D. Miller, for appellant. Robert O'Connor, for appellee.

SOMMERVILLE, J. Plaintiff and defendant reside in the town of Gretna, in this state, where they are engaged in pursuing two different, but very useful and worthy, lines of business. The former is a florist, and the latter, as its name indicates, is a manufacturer of fertilizer.

Plaintiff alleges that his property and business have been very largely damaged, through the fault of defendant, by the emission of fumes, gases, acids, etc., from its factory, which have destroyed the plants in his nursery.

Defendant answers by filing a general denial.

There was judgment in favor of plaintiff for $1,000, and defendant has appealed. Plaintiff has answered the appeal, and asks for an increase in the amount of the judgment.

[1, 2] The case presents only a question of fact, concerning which much testimony was heard on both sides. We have read the 460 pages of the record with much care, and are of the opinion that plaintiff has made out his case. He has sustained the burden of proof, and shown by a preponderance of evidence that he has suffered damage through the fault of defendant. His large collection of ferns, said by some witnesses to have been the largest and best in the South, was practically destroyed during the first week of October, 1908, by fumes, gases, and acids emitted from the plant of defendant, at the time that it was firing up at the beginning of the fall season.

Some of defendant's witnesses testify that defendant's plant is the most perfect fertilizer manufactory in the country, and that it emits no odors, and that the waste of acids is in such small quantities as to be harmless to human and plant life. Other witnesses for defendant admit that the fumes are quite dark and heavy at times, the presence of sulphuric acid gas quite manifest, and that its effect is harmful, and that it renders human beings uncomfortable. Many witnesses on both sides testify to the objectionable conditions attending the operation of the factory prior to the time of its improvement in 1904, when the Dens & Scrubber system was installed, for the purpose of conveying the sulphurous gases into the Mississippi river, below the surface of the

water. There were also installed the Gay-Lussac and Glover towers, for the purpose of conserving and recovering the acids formed during the progress of the work. All of these additions were real improvements, and they did very much to lessen the damage wrought by the defendant's plant, where materials so obnoxious and harmful as sulphur, acid, phosphate, cotton seed meal, blood, nitrate, soda, potash, sulphate of potash, etc., were used. During the operation of the plant different gases were formed, such as carbonic acid gas, salicia, hydrofluoric, chlorine, nitrogen, etc. Some, if not all, of these gases are harmful to plant life, if emitted in sufficiently large quantities; but defendant's witnesses say that the component parts are all measured, and that those parts which escape are infinitesimal and harmless, and are soon dissipated by the air.

The weight of the evidence shows that the position of defendant on this point is more theoretical than practical. Defendant's superintendent testifies that no test is made of the escape of chlorine gas.

Dr. Schwartz, who was called as a witness by both plaintiff and defendant, says:

"I believe sulphurous acid gas in large quantities is injurious to plant life. * * * Yes; I have observed larger quantities than usual escape from that plant. (He fixes one occasion about October, 1908.) * * * I saw ferns damaged, and I saw palms that were damaged. * * * No method has been found absolute to prevent the escape entirely, so it cannot be detected at the stack, and since a normal amount always does escape we can only estimate the amount of damage when that normal amount escapes. * * * It was the sulphurous fumes that did the damage. * * * Yes, sir; the sulphurous fumes."

The superintendent of defendant corroborates some of the testimony for plaintiff. He says he noticed "some little vegetation was scorched" in September or October, 1908. That:

"There may be a little excess of the amount of gases escaping, and when we notice that we regulate it right away. * * * The escape is a little heavier (when beginning to operate in the fall) than at other times, to get the plant under control, and it is not excessive at that time. * * * I say it is difficult to control in starting up."

The evidence shows that some of these gases are carried long distances in the air.

Defendant claims too much in saying that its modern machinery is perfect. The evidence is conclusive that it is not. Like many other excellent machines, its imperfections are more manifest at the time of starting, or firing up, at the beginning of the season in September, after having been closed down for several weeks, which closing is customary with defendant once every year. And it was at this time that plaintiff suffered his greatest damage. The superintendent of defendant company also testified that it had very recently settled several small claims for damages against defendant, because of its destructive fumes, acids, gases, etc.

Plaintiff has proved his case.

The judgment appealed from is affirmed.