249 So.2d 133

**Emmanuel J. LANGLOIS**

**v.**

**ALLIED CHEMICAL CORPORATION and
the Travelers Insurance Company.**

**No. 50852.**

June 7, 1971.

Rehearing Denied June 28, 1971.

D'Amico, Curet & Bush, Louis D. Curet, Baton Rouge, for plaintiff-appellant.

Taylor, Porter, Brooks &-Phillips, William Luther Wilson, Baton Rouge, for defendants-appellees.

BARHAM, Justice.

This suit was filed by Emmanuel Langlois, a fireman employed by the Baton Rouge Fire Department, for personal injuries he sustained from inhalation of a gas that escaped from the Allied Chemical Corporation. Suit was brought against Allied and its liability insurer, The Travelers Insurance Company.[1] On appeal the judgment of the district court which awarded Langlois damages was reversed. 238 So.2d 41.

---

1. The City of Baton Rouge intervened in the suit for recovery of the workmen's compensation benefits paid by it to Langlois. The district court awarded it a judgment in the amount of $769.04. On appeal the City of Baton Rouge did not file an answer, nor did it participate in any way in the proceedings in this court.

On February 23, 1967, a radio call was received by Fire Station No. 2 in Baton Rouge directing that a fire truck be sent to Delta Southern Tank Corporation to give assistance to two men who were trapped in a tank by a gas. Langlois, who was acting as temporary fire truck driver, and the other members of the crew proceeded to Delta's premises. Arriving at Delta's parking lot they were told that the men had been extricated and to return to the fire station. During the five-minute interval while they remained at Delta they encountered gas in the form of a haze or fog coming from an unknown source. Langlois' throat started tickling, his eyes smarted, and he began to cough. All others in the area evidenced the same effects from the gas. On the return trip they continued to encounter the gas with a heavier concentration for about two and one-half blocks. Although the windows of the cab of the truck were closed, Langlois and the Captain who rode with him in the cab still suffered from the effects of the gas. At the fire station Langlois was again exposed to the gas as it drifted in that direction while he was washing down the fire truck. To avoid contact with the gas he and the other firemen went into the station and closed the windows.

Langlois continued to cough the night after the exposure and for the next three days. He also began to expectorate a thick mucus, had difficulty in breathing, and ran a temperature of 102–103 degrees. A skin irritation occurred with some scaling and dryness of the face and ears. The morning of the fourth day after his exposure to the gas he was admitted to the hospital for treatment for chemical bronchitis. Five days later he was discharged from hospital with out-patient care. About a month after the incident Langlois returned to work, and approximately two weeks later he was discharged from all medical care. No permanent disability resulted from the injury.

It was ascertained after the incident that the gas was antimony pentachloride, which was used as a catalyst in the manufacture of certain Genetrons. The gas had escaped from Allied Chemical Corporation's plant, which was adjacent to Delta, when a Halon-lined pipe carrying the gas from a reactor ruptured.

Allied admits that it was responsible for the damage caused by the escaped gas, and that negligence is not the criterion for determining its responsibility. Allied urges that the final judicial conclusion as to its liability to a third party is to be made after a determination of the relationships and a consideration of the conduct of the parties toward each other. It admits that Langlois was a person protected from the damage caused by the poisonous gas released from Allied's premises into the general neighborhood, but contends that it had the right to

expect that Langlois would not act in such a manner as to cause his own damage. It argues that under the theory of contributory negligence or assumption of risk plaintiff, as a fireman, could and should have avoided the damage he suffered.

Langlois answers that it is of no moment that he was acting as a fireman, and that by any standard he did not cause or contribute to his own damage. He urges that where responsibility for damage attaches without proof of negligence, imprudence, or want of skill on the part of the defendant, the court should not inquire into the conduct of the one damaged to determine whether liability attaches. It is his position that contributory negligence and assumption of risk do not apply when liability is imposed without negligence.

Counsel for all parties litigant, while agreeing that Allied is responsible for the damages that ensued because it allowed a poisonous gas to escape, advance numerous theories and codal authorities as a basis for this responsibility in order to propose or dispose of the defenses urged. Their dilemma is partially the result of inconsistence in jurisprudential assignment of a legal basis for allowing recovery for damages resulting from the dangerous and harmful activities and enterprises.

Although we have deviated from the theory of the case pleading under Code of Civil Procedure Articles 854 and 865, the courts must still ascertain the nature of an action in order to determine the available defenses and the applicable prescription. It would be conceded by all that this is an action seeking damages for injury caused by the act of another. Under our Civil Code such an act is called an offense or quasi-offense and the action is generally termed a delictual or tort action. Louisiana is most fortunate to have a broad but simple statement of the law which determines the delictual responsibility of man. Article 2315 reads: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. * * *" Article 2316 reads: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." These articles are the basic source for determining when one man's conduct which does harm to another is of such a nature that the actor must respond in damages.[2]

Fault is the key word in Article 2315. Although it is given three qualities or categorized in three degrees by Article 3556(13), it is nowhere defined in the Civil Code. A careful reading of Civil Code

2. These articles can be traced to the Code Napoleon or one of its projets; to Domat, Civil Law in Its Natural Order (Strahan's tr., Cushing ed. 1861), Pt. 1, Book 2, Title 8, § 4, Article 1; and finally to the Lex Aquilia of the Romans. Stone, Tort Doctrine in Louisiana, 17 Tul.L.Rev. 159.

Article 2316 gives insight into the meaning of "fault" as expressed in Article 2315. It enumerates three additional or particularized faults—that is, negligence, imprudence, and want of skill. Article 2316 is not all-inclusive or definitive of fault, but rather illustrative of fault. To accord full meaning, purpose, and value to Article 2316, we must conclude that it defines three qualities of fault, that they apply to acts and to omissions to act in response to a duty, and that it is by its own express terms not a full definition of fault.[3]

Under these articles the courts of this state have been given a broad, general principle of legislative will under which we are required to determine when the interest of society is best served by allowing the act of man which causes harm to be accepted as a proper standard of conduct or when society is best served by requiring one who harms another to respond in damages for the injury caused. See Malone, Nuisance and Fault, 8 La.L.Rev. 248. Our common law neighbors are required, conversely, to begin with the jurisprudence arising out of specific circumstances and to draw from this jurisprudence a general principle to govern future determinations.

It has been said: " * * * The merit of the civilian general principle lies in the fact that the principle is wider than the cases decided and that hence it has within itself the potentiality of growth." Stone, Tort Doctrine in Louisiana, 17 Tul.L.Rev. 159, 166.

■ Definitions of fault are actually indefinite generalities and usually not illuminating when applying the concept. Colin and Capitant have said that fault signifies that conduct which a man should not have engaged in—that is, that he has acted as he should not have acted. 2 Colin et Capitant, Cours élémentaire de droit civil francais (8e éd.1935) § 190. Defining fault is a logomachy. Because of the difficulty in defining fault for all times and purposes and instead of defining fault by listing numerous activities which constitute fault (much as we enumerate the activities which constitute criminal conduct in our Criminal Code) our law has left this determination in the hands of the court. However, our lawmakers have provided us with numerous standards of fault in the Civil Code, in statutory law, and in ordinances. Fault is not limited to moral wrongs but encompasses many acts which are merely for-

---

3. Some writers have interpreted Article 2316 as merely making the omission to act a fault. In thousands of cases of external manifestation of conduct or acts we have required the proof of negligence in order to impose liability for those acts under Article 2315. We have required proof of negligence in the proper cases when one acts as well as when one fails to act. If negligence was not required to be expressed in Article 2315 to define a fault included in that article when man acts, why was it necessary to specify negligence in Article 2316 if it addresses itself only to failure to act?

bidden by law. The fault of the employer which makes him liable for the negligence of his employees is founded upon socio-economic needs and not upon moral considerations. Our Code has defined man's responsibility in numerous relationships with others, such as lessor (Arts. 2692–2709), as lessee (Arts. 2710–2723), as carrier (Arts. 2752–2754), as an adjoining landowner (Arts. 667, 670, 691, 697, 698), as a neighbor (Art. 669), to illustrate only a few.[4]

As Professor Stone said about Article 2315, which we paraphrase here to include also Article 2316: Hence it becomes clear that in the decision of a case in tort or delict in Louisiana, the court first goes to that fountainhead of responsibility, Articles 2315 and 2316, and in applying those articles it goes to the many other articles in our Code as well as statutes and other laws which deal with the responsibility of certain persons, the responsibility in certain relationships, and the responsibility which arises due to certain types of activities. Just as we have found in the Code many standards of conduct, many statutes and local ordinances also detail standards of conduct which courts may apply per se, impliedly or by analogy. Criminal laws, traffic regulations, zoning laws, health laws, and others may and often do set the standard for lawful conduct in personal relationships, although they are designed for societal protection and incorporate penalties and specific consequences for their mere breach. Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1971).

One standard of conduct appropriate for consideration here is expressed in Article 669, a specific codal rule of conduct governing the activities of man in relation to his neighbors and a rule of vicinage. It reads: "If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place."

In the recent case of Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385 (1971), this court found that the activities specified in the article were not the only ones which are to be regulated when insufferable inconvenience and harm are inflicted upon neighbors.[5]

---

4. See Stone, op. cit. supra fn. 2, pp. 210, 211. See also Malone, Nuisance and Fault, 8 La.L.Rev. 248; Malone, Neighboring Landowners—Dangerous Activities, 31 La. L.Rev. 231, 244.

5. The majority in Robichaux v. Huppenbauer, while finding that "diffusing smoke or nauseous smell" was the only activity expressly named in Article 669, concluded that under our jurisprudence and by a comparison with common law we include within that article numerous activi-

Our jurisprudence has not limited recovery for damage suffered by one in the neighborhood from dangerous, harmful activities of landowners, but has included contractors and others. Moreover, damages have been given for injury suffered from these activities not only to adjoining landowners but to lessors or tenants,[6] third parties,[7] and even to parties in privity with the one who actually conducted the activity.[8] These cases, as previously noted, have varied in determining the legal basis for allowing recovery. In considering the various activities which create a foreseeable harm to those in the neighborhood, even when conducted with the greatest of prudence and care, the trend has been toward an expansion of the classes of those who are entitled to recovery as well as an expansion of the classes from whom recovery can be had.[9]

In general the early cases seem to rely upon an old common law treatise, Wood on Nuisances,[10] as the basis for determining

ties which visit insufferable harms and inconveniences upon neighbors. I concurred, reaching the same result within our Civil Code. I found that the predecessors of Article 669 were incorrectly translated from the French text in our 1808 and 1825 Codes, that the French expression was controlling, and that the broad, inclusive text of the French article should have been, and was by law, incorporated in our 1870 Code. The English translation had omitted the phrase "other inconveniences". Moreover, I found the article to be merely illustrative.

6. State ex rel. Violett et al. v. Judge, 46 La.Ann. 78, 14 So. 423 (1894).

7. Raphael Brothers v. Cerophyl Laboratories, 211 La. 354, 30 So.2d 116 (1947).

8. Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955).

9. Kennedy v. Phelps, 10 La.Ann. 227 (1855); City of New Orleans v. Lambert, 14 La.Ann. 247 (1859); Werges v. St. Louis, C. & N. O. Railroad Company, 35 La.Ann. 641 (1883); Blanc v. Murray, 36 La.Ann. 162 (1884); Villavaso et al. v. Barthet et al., 39 La.Ann. 247 (1887); State ex rel. Violett et al. v. Judge, 46 La.Ann. 78, 14 So. 423 (1894); Dubos v. Dreyfous, 52 La.Ann. 1117, 27 So. 663 (1900); Froelicher v.

Oswald Ironworks, 111 La. 705, 35 So. 821 (1903); Kuhl v. St. Bernard Rendering & Fertilizing Co., 117 La. 86, 41 So. 361 (1906); Froelicher v. Southern Marine Works, 118 La. 1077, 43 So. 882 (1907); Perrin v. Crescent City Stockyard & Slaughterhouse Co., 119 La. 83, 43 So. 938 (1907); Le Blanc v. Orleans Ice Mfg. Co., 121 La. 249, 46 So. 226 (1908); Wichers v. New Orleans Acid & Fertilizer Co., 128 La. 1011, 55 So. 657 (1911) · Egan v. Hotel Grunewald Co., 129 La. 163, 55 So. 750 (1911); Long v. Louisiana Creosoting Co., 137 La. 861, 69 So. 281 (1915); Orton v. Virginia Carolina Chemical Co., 142 La. 790, 77 So. 632 (1918); Dodd v. Glen Rose Gasoline Co., 194 La. 1, 193 So. 349 (1939); McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21 (1944); Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816 (1947); Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955); Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (1957); Jeanfreau v. Sanderson, 239 La. 51, 117 So.2d 907 (1960); Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (1968).

10. Wood, Horace G., A Practical Treatise on the Law of Nuisances in Their Various Forms: Including Remedies Therefor at Law and in Equity, 2 vols. (3rd Ed. 1893).

liability. In the late 1800's and the early 1900's a line of cases appeared which sometimes impliedly but other times expressly determined that liability was founded in tort law by analogy to codal standards of conduct defined in Articles 666, 667, 668, and 669. Egan v. Hotel Grunewald Co., 129 La. 163, 55 So. 750 (1911) is sound jurisprudential authority that liability for dangerous and hazardous activities of man flows from Civil Code Article 2315 by analogy with other Civil Code Articles.[11]

In 1957 in Gotreaux v. Gary, 232 La. 373, 94 So.2d 293, recovery was allowed against both the landowner and his contractor, a flying service, for crop damage

from spraying operations. The court rejected negligence as a criterion for liability and looked to Civil Code Article 667 for the standard of conduct. Since Article 667 could not, of course, have literally afforded recovery against the contractor, the source for assigning responsibility for the act and to the parties must have been Civil Code Article 2315. See also Jeanfreau v. Sanderson, 239 La. 51, 117 So.2d 907 (1960).

As recently as 1968 in Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627, this court allowed recovery for damage from pile driving. Although the court there applied Article 667, it specifically decided the action arose ex delicto and was prescribed by one year.[12] The majority

---

11. In that case the owner of the property and the contractor (who drove piling and sheet piling and conducted the excavation work) were both held for damage to an adjoining property owner. While the driving of the sheet piling into the footing of an adjoining building was the result of the negligence of the owner's architects and engineers in drawing the plans, the contractor was not negligent in following those plans. Furthermore, there was no finding of negligence, and indeed it would have been difficult to make a finding that the encountering of quicksand and the resulting seepage of water which caused damage to the adjacent property were the result of negligent conduct of the property owner or the contractor. The opinion cited Articles 667, 2315, 2316, and 2317, and cast the owner and the contractor as joint tort feasors for fault under Article 2315 by analogy with Article 667. Negligence under Article 2316 could be attributed to the owner in only one aspect.

12. Compare with Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816 (1947), where the court allowed recovery for damages occasioned by smoke, gases, soot, and cinders emanating from a roundhouse operated by the railroad. The court cited Articles 666, 667, 668, and 669 as authority for allowing recovery, stating: "Clearly, therefore, the plaintiffs' action is not one in tort, but, rather, one that springs from an obligation imposed upon property owners by the operation of law so that all may enjoy the maximum of liberty in the use and enjoyment of their respective properties." However, the court then discussed prescription and applied the one-year prescription for actions ex delicto as opposed to the 10-year prescription which would apply to a real action. See also State ex rel. Violett et al. v. Judge, 46 La.Ann. 78, 14 So. 423 (1894). The court there cited Civil Code Article 666, but allowed a lessee or tenant to recover. The landlord had not appealed, and this court specifically discussed the tenant's right to

quoting from another case said: " * * * 'While negligence is an example of "fault" within the meaning of Article 2315, it is well settled that the obligation imposed upon proprietors by Article 667 is absolute and that proof of negligence is not required in order to recover for a violation or breach thereof.' Gulf Insurance Co. v. Employers Liability Assur. Corp., La.App., 170 So.2d 125, 127. Cf. 40 Tul.L.Rev. 712; Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845."

The storage of the dangerous, highly poisonous gas by Allied was an activity which, even when conducted with the greatest of care and prudence, could cause damage to others in the neighborhood. It was an ultra-hazardous activity, and the possible consequences of the gas escaping and causing harm were known or should have been known.[13]

■ We do not here establish a new standard for liability, but merely apply the standard set by law and applied repeatedly in our jurisprudence. The activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations. See Yommer v. McKenzie, 255 Md. 220, 257 A.2d 138 (1969).

■ Here we find that proof that the gas escaped is sufficient, and proof of lack of negligence and lack of imprudence will not exculpate the defendant. The defendant has injured this plaintiff by its fault as analogized from the conduct required under Civil Code Article 669 and others, and responsibility for the damage attaches to defendants under Civil Code Article 2315.[14]

Having determined that plaintiff's cause of action is delictual under Civil Code Article 2315 in that the defendant Allied has injured the plaintiff through its fault, we now pass to the question of whether the

---

stand and recover in damages. Since the tenant's rights could not have arisen under the law of property, the recovery must have been granted under Article 2315.

13. The states under common law have recognized that, in ultra-hazardous activities such as this, liability is imposed in the absence of negligence. Prosser, Torts (3rd ed. 1964), § 77; Restatement, Torts § 519 (1938); Restatement, Torts 2d (Tent.Draft No. 10 1964), §§ 519–520; Malone, 31 La.L.Rev. 231.

14. Civil Code Articles 666, 667, 668, 670 and 2322 and Articles 2318–2322 also express the intent of the redactors of our Code to impose liability for fault which does not encompass negligence. Without requiring negligence by him who is to respond in damages, some of these articles impose liability for constructions, others for activities, still others by reason of relationships.

defendant has a defense to plaintiff's action for recovery of damages. The plaintiff Langlois was exposed to the gas which caused him injury while he was acting as a fireman. He had received training for working in an area contaminated with gas and had been taught the nature of the risks involved as well as the proper use of the safety breathing equipment which was made available to firemen by the Fire Department. He had been taught that when in the presence of an unknown gas, he was to assume the worst and take the necessary precautions, protecting himself first, since if he was disabled, he would be of no assistance to others. However, the taking of any protective measures was a matter of individual judgment.

The fire truck was equipped with breathing devices, which consisted of a metal air tank to be worn on the fireman's back by the means of shoulder straps with a hose which connected the oxygen in the tank to a full face mask. At the time Langlois came into contact with the gas, although he suffered a tickling in his throat, coughing, and burning eyes, he did not feel any need to take the precaution of using the breathing device. Furthermore, it would have been difficult if not impossible to have worn the device on his back while he drove. There were several firemen on the truck, including the captain of the district who rode in the cab with Langlois. Additionally, the Chief of the Baton Rouge

Fire Department and the District Chief were present on the Delta premises. The sensations felt by these firemen were basically the same as those felt by Langlois, and none of them felt it necessary to use the breathing devices.

The defense of contributory negligence which is urged here presupposes original negligence on the part of the defendant. This case is not a case where negligence is an ingredient of fault, and contributory negligence is not a defense. Usually, the assumption of risk doctrine will apply where the nature of the relationship of the parties appears to exact consent from the one injured to be exposed to possible harm. In such situations the plaintiff understands the risk involved and accepts the risk as well as the inherent possibility of damage because of the risk. There is some authority for rejecting assumption of risk in cases which do not involve negligence, but the majority view is that assumption of risk is a defense to strict liability. A plaintiff who with full knowledge and appreciation of the danger voluntarily exposes himself to the risks and embraces the danger cannot recover damages for injury which may occur.

We have here found absence of negligence, but we have found that the defendant is legally at fault. We must examine the plaintiff's appreciation and knowledge of the risks, his ability to avoid

or minimize the risks, and whether he has consented to encounter the risk. The interests of the parties must be balanced. Plaintiff is not required to surrender valuable rights and privileges because defendant's conduct threatens him. Yet if the plaintiff could readily avoid or mitigate the damage caused by defendant's conduct and he knows how to do so, he cannot act in such a manner as to invite injury.

Under the facts we have related above, we first note that the standard of conduct required of the plaintiff and the defendant in this case does not come within the ambit of those cases which deal with firemen who respond to calls to fight fires on the defendant's premises. See Annotation, 13 A.L.R. 637; Annotation, 86 A.L.R. 1205; 69 University of Pennsylvania Law Review 237. It is noted, however, that the jurisprudence has been in a constant swing toward giving more protection to firemen in the discharge of their duties upon a defendant's premises.

█ In our case, Langlois did not enter the premises of Allied. He responded to the call to help others who were in imminent danger of suffering injury. In his response to the call his duty was to rescue those on adjoining premises whose lives and health were endangered by reason of Allied's fault. Any voluntariness on the part of Langlois could only be found if we assume a waiver because he became a fire-

man. Firemen, police officers, and others who in their professions of protecting life and property necessarily endanger their safety to not assume the risk of all injury without recourse against others. Briley v. Mitchell, 238 La. 551, 115 So.2d 851 (1959). Here, Langlois' rescue mission on premises other than defendant's would tend to minimize the extent to which Allied might be required to respond in damages to others. Langlois' primary duty as a fireman was to drive the fire truck. In regard to his specific duty, it cannot be said that he assumed risks from the gas any more than drivers of other vehicles who might be in and about the premises. He was subjected to the gas while the truck remained on the premises, during the return trip to the fire station, and finally at the fire station when he washed down the truck.

██ The determination of whether a plaintiff has assumed a risk is made by subjective inquiry, whereas contributory negligence is determined objectively under the reasonable man standard. See Restatement (Second), Torts § 496 (1965); Symposium: Assumption of Risk, 22 La.L.Rev. 1–166. Although Langlois as a fireman possessed more knowledge than many about the nature of gases and the consequences of exposure to gases, he did not here knowingly and voluntarily encounter the risk which caused him harm. He acted in response to duty, and his exposure to

the risk in line with that duty was minimal. Langlois did not embrace a known danger with that consent required by law to bar his recovery for defendant's fault. The defendants must establish by a preponderance of evidence their affirmative defense. They have failed to discharge this burden.

Langlois asks for an increase in the award made by the lower court of $2500.00 plus specials. After a review of the record we are of the opinion that the award made by the lower court was proper.

For the reasons assigned the judgment of the Court of Appeal is reversed. It is ordered that the plaintiff Emmanuel J. Langlois have judgment against Allied Chemical Corporation and The Travelers Insurance Company in solido for $3269.04 with legal interest from date of judicial demand until paid. It is further ordered that the defendants are to pay all costs.

McCALEB, Chief Justice (concurring).

This case, in my opinion, is cognizable only under Articles 2315, 2316 and 2317 of the Civil Code, and I entertain no doubt that Allied Chemical Corporation was negligent in permitting the escape of noxious gas from its premises. Hence, the only question for determination is whether plaintiff, by reason of his employment as a fireman, assumed the risk of the harm he encountered and, if not, whether he was guilty of contributory negligence in not using the protective devices available to him. I think the plea of assumption of risk is clearly untenable for the reasons shown in the majority opinion. I am also of the opinion that the facts of this case do not warrant a finding that plaintiff was guilty of contributory negligence.

For these reasons I concur in the result.

HAMLIN, Justice (dissenting).

I am compelled to dissent in this matter because I believe that the Court of Appeal has correctly analyzed the facts and applied the law applicable thereto.

I am particularly impressed with the following statement contained in the opinion of the Court of Appeal:

"We find as a fact that plaintiff herein knew upon leaving the firehouse that he was called to assist in a rescue mission made necessary by gas escaping from an unknown source. Upon arriving at the scene, plaintiff immediately became aware that gas was present in the vicinity. It could be seen by all present. Neither plaintiff nor anyone else present knew the type of gas involved. That the gas possessed irritant qualities became immediately known to plaintiff. His eyes began to water, his throat commenced tickling and he started coughing. The record establishes beyond doubt that plaintiff's training had taught

him his first consideration should be for his own protection not only for self-preservation, but also because only in this way could he be of service to others. It also appears that plaintiff's training taught that when encountering gas, especially gas of an unknown type, plaintiff should assume the worst and take precautionary measures to guard against being overcome. It also appears that plaintiff had at his disposal safety equipment designed to protect him against the effect of smoke and harmful gases. In addition, the manuals used in plaintiff's training expressly warn that irritant gases can damage the respiratory tract and therefore precautions should be taken when such substances are encountered. When plaintiff encountered the unknown irritating gas on Delta's premises and experienced the reactions noted, it then became incumbent upon him to use an available air pack for his protection."

I respectfully dissent.

SUMMERS, Justice (dissenting).

I agree that the assumption of risk doctrine may properly be invoked as a defense to strict liability. Therefore, a plaintiff who, with full knowledge and appreciation of the danger, voluntarily exposes himself to the risk and embraces the danger cannot recover damages for injury which may occur.

I cannot agree, however, that plaintiff was unaware of or did not assume the risk under the facts of this case. Plaintiff was, at the time of his injury, a paid, trained fireman in the employ of the city of Baton Rouge. This occupation is generally and properly regarded as hazardous. Firemen are routinely exposed to risk of injury or death by the duties they are called upon to perform. One of their duties involves rescue of persons endangered by harmful gas.

Plaintiff had been taught to work in areas contaminated by gas and he was made aware of the nature of the risk involved. Proper use of safety breathing equipment was part of that training. One precaution this training emphasized was that firemen should assume the worst when in the presence of an unknown gas—the first rule of safety being to protect himself for, if disabled, he was rendered ineffective to perform his duties. This training stressed that the question of self-protection was a matter of individual judgment for firemen.

In addition, the fire truck was equipped with breathing devices consisting of metal air tanks designed to be worn on a fireman's back. They were held in place by shoulder straps. A hose connected the oxygen in the tank to a full face mask. This device would make plaintiff's duty as a truck driver impracticable, but if it was

necessary for him to don the breathing apparatus, regulations permitted him to turn over his driving duties to someone else.

Knowing that he was being called to a rescue mission involving dangerous gas, knowing the precautions he should take to protect himself and realizing that the possibility of injury was part of the risk of his employment as a fireman, plaintiff should not be permitted to recover in this case. McGee v. Adams Paper and Twine Co., 26 A.D.2d 186, 271 N.Y.S.2d 698 (1966) appealed to Court of Appeal of N. Y., 19 N.Y.2d 673, 278 N.Y.S.2d 864, 225 N.E.2d 555 (1967) and Chesapeake & Ohio Ry. Co. v. Crouch, 208 Va. 602, 159 S.E.2d 650, cert. denied, 393 U.S. 845, 89 S.Ct. 128, 21 L.Ed.2d 115 (1968).

It is no defense to the burden of care imposed on plaintiff by the doctrine of assumption of risk, to contend that other firemen took no precautions and received no injuries, and hence he could not be expected to avail himself of safety precautions, such as the use of the breathing apparatus. Especially is this so when plaintiff experienced definite physical reactions to the gas in time to protect himself, whereas the other firemen did not. Plaintiff was well aware, from his training, that tolerance of individuals to the ill effects of gas varied.

I respectfully dissent.