401 So.2d 538 (1981)
Norris D. JACKSON, Plaintiff-Appellant,
v.
TRI-STATE ELEVATOR COMPANY, INC., et al., Defendants-Appellees.
No. 8113.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
*539 William Henry Sanders, Jena, and Wilson M. Montero, Jr., New Orleans, for plaintiff-appellant.
Davis & Murchison, James D. Davis, Alexandria, John Sturgeon, Harrisonburg, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and SWIFT, JJ.
DOMENGEAUX, Judge.
Plaintiff, Norris Dale Jackson, filed suit to recover damages for personal injuries allegedly suffered when he stumbled while stepping out of an elevator which stopped above floor level in the Catahoula Parish Courthouse in Harrisonburg, Louisiana, on August 12, 1976. Plaintiff alleges that he sustained injuries to his back and neck which aggravated prior surgery to his neck and spine; he was forced to undergo additional surgery; and he suffered paralysis from the waist down, all as a result of his stumble from the unlevel elevator.
The jury returned a verdict in favor of Aetna Life & Casualty Company (Aetna), the Catahoula Parish Police Jury's liability insurer, and the only defendant remaining in this lawsuit.[1] The trial court then dismissed plaintiff's claim with prejudice.
Plaintiff has appealed assigning the following errors: (1) Refusal of the judge to recuse himself; (2) Commission of reversible error by the court during voir dire; (3) Failure to grant a continuance; and (4) A jury verdict which is inconsistent with the law and the facts.
Alleged errors (1), (2) and (3) have already been rejected in a decision previously rendered by this court on plaintiff's motion to remand. See Jackson v. Tri-State Elevator Company, Inc., 398 So.2d 199 (La.App. *540 3rd Cir. 1981). Our decision here will be limited to a consideration of plaintiff's assigned error No. 4: Was the jury verdict inconsistent with the law and the facts?
The jury rendered its verdict in Aetna's favor without indicating its reasons for so doing. However, in order to decide the case in Aetna's favor, the jury must have concluded that one or more of the following statements was true: (1) The elevator in the Catahoula Parish Courthouse was not defective; (2) Plaintiff's fall from the elevator did not cause any injuries, including paralysis; it did not aggravate any previous surgery to plaintiff's neck or spine; nor did it necessitate further surgery; or (3) Plaintiff's fall from the elevator was caused by his own fault in not observing that the elevator was higher than the surrounding floor.

FACTS
The only eyewitnesses to the alleged incident were the plaintiff himself and Jim Ratcliff, who accompanied the plaintiff to the Catahoula Parish Courthouse. Each man testified that he had never been to this particular building so both were unfamiliar with its layout. They asked for directions to a judge's office[2] and a construction worker[3] directed them to the elevator because the judge's office was on the second floor.
According to their testimony, plaintiff and Mr. Ratcliff entered the automatic elevator on the ground floor and rode to the second floor. There the door opened, closed partially and then reopened. Mr. Ratcliff then held the door open with his hand so it would not close while they disembarked from the elevator. Plaintiff exited first, but he stumbled and fell against a wall about three feet from the door of the elevator. He did not fall down. Mr. Ratcliff hurriedly followed in an attempt to help prevent plaintiff from falling.
Both plaintiff and Mr. Ratcliff turned around and noticed that the floor of the elevator was stopped several inches above the level of the second floor. After concluding their business on the second floor, plaintiff and Mr. Ratcliff re-entered the still unlevel elevator and rode to the ground floor where the elevator leveled properly. They left the building without telling anyone of plaintiff's mishap in the elevator.
1. Was the elevator defective?
Most witnesses who were familiar with and had ridden upon the elevator for several months before the accident allegedly occurred testified that they knew from personal knowledge that the elevator frequently stopped above or below the level of a designated floor. That this elevator malfunctioned was commonly known to most who operated and rode on the elevator with any frequency. Only one witness who regularly rode the elevator testified that he never knew the elevator to stop above or below a floor.
It is uncontested that the police jury was the body responsible for maintaining the elevator. The evidence in the record demonstrates that the elevator was last repaired in January of 1976 by Tri-State Elevator Company, Inc. On that occasion, however, Tri-State was called to repair the elevator because it would not operate at all, not because it failed to level properly.
The jury was instructed that the owner or custodian of a defective thing is liable for injuries caused by the defect. However, the owner or custodian can escape liability by showing that the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. La.C.C. Art. 2317; Marguez v. City Stores Company, 371 So.2d 810 (La.1979).
For a plaintiff to successfully recover under Art. 2317 he must prove: (1) that the thing which caused the damage was in *541 the care and custody of the defendant; (2) that the thing was defective (i. e., it occasioned an unreasonable risk of injury to another); and (3) the injury was caused by the defect.
The evidence clearly establishes that the elevator was in the care of the police jury and that it was defective because it failed to level properly. The jury would have been clearly wrong in concluding otherwise. Hence the jury must have concluded that either the injuries were not caused by the defect, or the plaintiff's stumble resulted from his own fault.
2. Did the defective elevator cause plaintiff's injuries?
The jury could reasonably have found that plaintiff's injuries were not caused by the defect in the elevator.
The evidence established that plaintiff has had a history of injuries to and degenerative conditions in his back and neck. He first injured his lower back in 1966 and reinjured it in 1967. Surgery to his back was performed for the first time in 1967 following the second injury. In November of 1975 plaintiff reinjured his back and injured his neck in an automobile accident.[4] As a result of this accident two slipped discs were removed from his lower back on May 13, 1976, and two discs were removed from his neck and a fusion was performed by inserting a plug of hip bone into the neck on May 21, 1976, at St. Luke's Hospital in Houston, Texas. Both surgical procedures were performed by Dr. Alexander Brodsky of Houston, Texas, an orthopaedic surgeon, on the recommendation of Dr. John McCutchen, plaintiff's treating physician, a neurologist who was also from Houston, Texas.
In July of 1976, two months after his surgery, plaintiff was examined by Doctor McCutchen and was found to be doing very well. Two months later in September of 1976 (one month after the accident), plaintiff was again examined by Doctor McCutchen. Plaintiff described his elevator mishap and the resulting increase in pain to Doctor McCutchen. The doctor examined plaintiff and found that his physical condition had deteriorated since the July examination. He also found that the neck fusion had been disrupted and was not healing as it should.
Plaintiff next saw Doctor McCutchen in December of 1976. At that time, he complained of increased pain in his neck but felt that his back was a little better. Plaintiff did not consult Doctor McCutchen again until seventeen months later in May of 1978. During this hiatus he continued and completed his legal education. However, he experienced pain daily and described feelings of numbness. During that seventeen month interim plaintiff refilled prescriptions for pain medication about once a month.
Finally, in August of 1978, surgery was again performed on plaintiff's neck by Doctor Brodsky. Two discs were removed, new fusions were performed and the disrupted fusion was re-fused. Plaintiff's complaints persisted, however, until finally, in October of 1979, plaintiff lost all sensation in his legs and was unable to control his excretory functions.
According to Doctor McCutchen, plaintiff's paralysis was caused by a ruptured or slipped disc in his lower back. To relieve the paralysis, the disc was removed. However, the paralysis was going to last about two years, after which time the plaintiff would be able to walk with crutches and would be able to function normally in his profession as an attorney.
By way of deposition, Doctor McCutchen attributed all of plaintiff's post-August 1976 symptoms and complaints, including his paralysis, to the elevator accident of August 12, 1976. Doctor Brodsky, also by way of deposition, testified that he felt that more probably than not plaintiff's problems, dating from September of 1976 through his paralysis, were a result of the elevator accident also.
*542 Despite the medical evidence to the contrary, the jury would not have been manifestly erroneous in concluding that plaintiff's ongoing discomfort, his 1978 surgery, and his later paralysis and surgery were neither related to nor caused by his stumble from the Catahoula Parish Courthouse elevator in August 1976.
The jury may have concluded that plaintiff's May 1976 neck fusion simply failed to heal properly. Doctor Bruce Craig, defendant's expert witness who was called to explain in laymen's terms the surgical procedures performed in Houston, testified that not all fusions are successful. Sometimes the inserted bone just fails to live, thus causing the fusion attempt to fail. Doctor Craig also testified that the discs which were removed from plaintiff's neck in August 1978 were, according to the surgical reports, recognized by Doctor Brodsky as being diseased in June of 1976, two months before plaintiff stumbled from the elevator. Additionally, the ruptured or slipped disc which caused plaintiff's temporary paralysis in 1979 was revealed as a degenerative bulging disc by a myelogram performed between July 27, 1978, and August 8, 1978, more than a year before plaintiff's paralysis.
In addition, the jury may have been reluctant to accept the conclusions of Doctors McCutchen and Brodsky that all of plaintiff's post-August, 12, 1976, complaints resulted from plaintiff's stumble from the elevator, especially if it considered other evidence presented: plaintiff only infrequently visited his Houston doctors following the elevator accident yet withstood the rigors of going to law school during the year and a half after the accident; and plaintiff insisted on delaying any further surgery to correct the failed surgery until after completing law school, thereby exposing himself to serious additional injury from daily activity.
Considering the degenerative conditions which flourished in plaintiff's neck and back for years, and the other evidence which was presented, we do not believe the jury would have been clearly wrong in deciding that plaintiff's stumble from the defective elevator did not cause his injuries.
3. Was plaintiff's fall caused through his own fault?
The trial court charged the jury that "an individual with an infirmity is held to the same degree of care that a person with this infirmity is capable of exercising and that to fulfill this duty an incapacitated person must be required to exert greater care for his own safety than is demanded by an individual free of physical infirmities." King v. Investment Equities, Inc., 264 So.2d 297 (La.App. 1st Cir. 1972).[5]
A person is deemed to have seen that which a reasonably prudent observer could have seen or should have seen under the same or similar circumstances. Richard v. Sonnier, 363 So.2d 961 (La.App. 3rd Cir. 1978); Williamson v. Gulf Coast Line Contracting Company, Inc., 301 So.2d 657 (La. App. 3rd Cir. 1974).
The jury might have concluded that a reasonably prudent person riding in an elevator, in the exercise of reasonable care for his own safety, could have or should have observed the considerable difference in elevation between the level of the elevator floor and the level of the designated floor before stepping out of the elevator. Indeed, nothing in the record tends to show that the difference in elevation was not readily observable by one in the elevator.
Plaintiff testified that he was prevented from observing the difference in elevation because a stiff neck collar he was wearing prevented him from looking downward. However, plaintiff, an incapacitated person, was required to exert greater care for his own safety than an individual free of physical infirmities. In order to discharge his duty of exercising reasonable care for his safety, plaintiff might have bent forward at the waist to ascertain whether the floors *543 were level or he might have solicited that information from his fellow passenger, Mr. Ratcliff. However, neither precaution was taken.
Under the circumstances of this case, we cannot say the jury erred if it found, as a matter of fact, that the difference in elevation between the floor of the elevator and the designated floor was easily observable by anyone in the elevator, and that plaintiff was contributorily negligent,[6] and thus barred from recovery, in not observing that which was plainly apparent to the reasonably prudent person. Marshall v. Biggs, 392 So.2d 111 (La.App. 1st Cir. 1980).

DECREE
For the above and foregoing reasons the judgment of the district court is affirmed. All costs are assessed against the plaintiff, Norris Dale Jackson.
AFFIRMED.
NOTES
[1] All other defendants were released or dismissed prior to or during trial. Those defendants were: the Catahoula Parish Police Jury, Tri-State Elevator Company, Inc., Otis Elevator Company, Westerchil Construction Company, and Charles R. Westerchil.
[2] Plaintiff was a law student working for a lawyer during the summer and Mr. Ratcliff was plaintiff's employer's client. Plaintiff later completed his legal education and was hired by the same lawyer, who is also one of plaintiff's lawyers in this litigation.
[3] At that time the courthouse was being renovated or remodeled.
[4] Plaintiff settled his tort and workmen's compensation claims which emanated from this 1975 accident for $40,000.00 and $16,000.00 respectively.
[5] The underscored portions of the charge should probably have read: "same degree of care of an ordinary prudent person which the law establishes for everyone ... may be required... of an individual free of physical infirmities." See King, 264 So.2d at 301.
[6] A plurality of the Louisiana Supreme Court has recently determined that the defense of "victim fault" under La.C.C. Art. 2317, as identified in Loescher v. Parr, 324 So.2d 441 (La. 1976), may include ordinary contributory negligence. Dorry v. Lafleur, 399 So.2d 559 (La. 1981). The plurality retreated from a suggestion in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971) that in no case of strict liability would ordinary contributory negligence be a defense. Independently of Dorry, two Court of Appeal decisions concluded that under the circumstances of those cases ordinary contributory negligence amounted to victim fault. Sullivan v. Gulf States Utilities Company, 382 So.2d 184 (La.App. 1st Cir. 1980) and Wilkinson v. Hartford Accident & Indemnity Co., 400 So.2d 705 (La.App. 3rd Cir. 1981). We believe the same conclusion can be made under the circumstances of this case.