STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-80

BENNY RAY BARNES, ET UX.

VERSUS

JOHN L. BASS, ET AL.

**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 32709
HONORABLE JOHN PHILIP MAUFFRAY, JR., DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, Marc T. Amy, Michael G. Sullivan, and Glenn B. Gremillion, Judges.

**REVERSED IN PART AND RENDERED.**

Thibodeaux, Chief Judge, dissents and assigns written reasons.
Saunders, J., dissents for the reasons assigned by Chief Judge Thibodeaux.

Whit M. Cook, II
7910 Wrenwood Boulevard, Suite A
Baton Rouge, LA   70809
(225) 923-3104
COUNSEL FOR DEFENDANT/APPELLANT:
     Merit Mortgage, LLC

Lloyd E. Hennigan, Jr.
Hennigan and Walters
Post Office Box 1970
Jena, LA   71342
(318) 992-4105
COUNSEL FOR DEFENDANT/APPELLEE:
     Bass Construction Company

**Donald Wilson**
**Gaharan & Wilson**
**Post Office Box 1346**
**Jena, LA   71342**
**(318) 992-2104**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
> **Benny Ray Barnes**
> **Ora M. Barnes**

**Michael H. Pinkerton**
**Frilot, Partridge, Kohnke & Clements, L.C.**
**3600 Energy Centre**
**1100 Poydras Street**
**New Orleans, LA   70163-3600**
**(504) 599-8000**
**COUNSEL FOR THIRD PARTY APPELLEES:**
> **New South Federal Savings Bank**
> **Merit Mortgage, LLC**

**John L. Bass**
**Rt. 2, Box 128**
**Newellton, LA 71357**
**IN PROPER PERSON**

AMY, Judge.

The defendant mortgage broker appeals a determination she negligently failed to inform the plaintiff borrowers of the merits of placing funds owed to their builder in an escrow fund. After the builder refused to return the funds paid directly to him and the prospective mortgage was denied, the plaintiffs filed the instant suit against the defendant builder and against the defendant mortgage broker. The mortgage broker appeals the trial court's award of damages to the plaintiffs. For the following reasons, we reverse in part and render.

## Factual and Procedural Background

The plaintiffs, Benny and Ora Barnes, sought to build a house on property they owned in LaSalle Parish, Louisiana. Through an acquaintance, the Barneses met John Bass, a contractor. According to Mr. Barnes, Mr. Bass indicated that he could construct the home for $126,700.00. Mr. Barnes also testified as to the contract he and Mrs. Barnes entered into with Mr. Bass, an agreement evidenced in the record by a document entitled "Proposal." The proposal, contained on a "John L. Bass Construction Co." form, bears Mr. and Mrs. Barnes' signatures and a "Date of Acceptance" of August 11, 2001. The proposal indicates that Mr. and Mrs. Barnes were to pay "10% down" for the construction. Both Mr. and Mrs. Barnes confirmed that they negotiated the contract with Mr. Bass.

According to Mr. Barnes, Mr. Bass referred the couple to Beverly Buckner, a mortgage broker with Merit Mortgage, LLC. Ms. Buckner explained that, although she had not met Mr. Bass, Mrs. Barnes informed her that she and her husband had been referred by the contractor. Ms. Buckner testified as to the parties' relationship, which is evidenced, in part, by various documents. Among the documents contained

in the record is the "Mortgage Loan Origination Agreement." The agreement is dated October 16, 2001.

Ms. Buckner explained that she pursued a "construction-perm mortgage" for the Barneses. She explained that this type of mortgage is an interim loan used for the construction portion of the project and that another lender is obtained "who will take on the permanent loan after the home is built." Ms. Buckner submitted an application for the mortgage to New South Federal Savings Bank. In an attempt to obtain additional funds, the parties sought a $149,900.00 mortgage.[1] According to Ms. Buckner, New South sought verification that the Barneses were in compliance with the building contract's requirements and, accordingly, sought documentation that they had paid ten percent of the contract price to Mr. Bass. According to testimony at trial, a $14,900.00 money order was presented to Mr. Bass. Thereafter, and in keeping with the actual construction price, Mr. Bass retained $12,670.00 of that figure.

Following the exchange of funds, New South did not approve the Barneses' application due to its disapproval of Mr. Bass as the contractor. According to Sharon Lynn, Vice President and Regional Manager of New South, the Barneses' application remained viable, but they were required to find a different contractor. However, the Barneses did not choose another contractor to complete the project. Mr. Barnes testified that, although they tried, they were unable to recover the funds paid to Mr. Bass.

The plaintiffs filed the instant matter in April 2002. They named both Merit Mortgage and Mr. Bass as defendants. The petition sought the return of the funds

---

[1] According to testimony at trial, the Barneses sought funds in addition to the original $126,700.00 price contracted for by the parties. A second contract, reflecting a $149,900.00 construction price, and again providing that "ten (10%) percent shall be paid at the time of the execution of this contract," was completed for presentation to New South. It is contained in the record.

provided to Mr. Bass, "plus all fees paid by petitioners to defendant Merit, all actual and compensatory damages as the court may find appropriate in the premises, reasonable attorney's fees for the institution and prosecution of the action and for all costs of court."

Following a bench trial, judgment was entered in favor of the plaintiffs. Against Mr. Bass, the trial court awarded $12,670.00 for the unreturned funds, as well as $12,670.00 for "general damages on account of the conversion of their money and all los[s]es sustained as a result of their home not being built as expected[.]" Further, and relevant to this appeal, the trial court concluded that "Defendant Merit's fault, even though it had a contractual relationship with petitioners, was obviously negligent in rendering the advice to pay defendant Bass the down payment, rather than depositing same in an escrow account for Bass' credit in the event that [the] proposed building construction loan was approved." Each defendant was found to be "jointly liable for one-half petitioners' damage."

Merit Mortgage appeals, arguing that the trial court erred in: 1) concluding that it was negligent; 2) concluding that Mr. Bass' conduct was not a superseding intervening cause; 3) concluding that the Barneses were not comparatively at fault; 4) concluding that the clean hands doctrine does not prohibit recovery; 5) awarding general damages; 6) awarding an excessive amount of general damages; and in 7) awarding $366.21 in incidental costs. No appeal was filed on behalf of Mr. Bass.

**Discussion**

Merit Mortgage first questions the trial court's determination that it was negligent in failing to advise as to the use of an escrow account for the deposit made to Mr. Bass. It acknowledges that a mortgage broker may owe a duty to make

disclosures associated with the loan process, to assist the clients in the loan approval process, and to protect the clients' interest in dealing with a potential lender. However, it argues that no duty exists that requires a mortgage broker to protect a client's interest in transactions with a third party.

Louisiana Civil Code Article 2315 provides that: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." In considering whether to impose liability under Article 2315, the courts of this state utilize the duty-risk analysis. *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La. 3/10/06), 923 So.2d 627. A plaintiff seeking to establish a negligence claim must prove: 1) the existence of a duty to conform one's behavior to a specific standard; 2) the defendant failed to conform to that duty; 3) the conduct was a cause in fact of the plaintiff's injuries; 4) the conduct was a legal cause of the plaintiff's injuries; and that 5) actual damages resulted. *Id.*

The threshold question of whether the defendant owed the plaintiff a duty is a question of law. *Lemann*, 923 So.2d 627. In "deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented." *Id.* at 633. The court must inquire as to "whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.*

First, we find no jurisprudential or statutory support for a determination that Merit Mortgage, as a mortgage broker, owed a duty to advise the plaintiffs as to the use of an escrow account. Furthermore, the application of general fault principles, noted in *Lemann*, is unhelpful given the lack of particular information in the record before us. Rather, the facts developed by the plaintiffs leave the court with little

4

information regarding the practices/standards associated with the mortgage broker/borrower relationship.

In this regard, the record indicates, at most, that Merit Mortgage did not counsel the Barneses regarding the use of an escrow account in dealing with their contractor. Later, the contractor failed to return the plaintiffs' funds when he was not approved as the contractor during the mortgage loan process. Even with these facts, however, the plaintiffs did not demonstrate that this action deviated from the mortgage broker's duty and that such a deviation caused the ultimate harm suffered. In this regard, the plaintiffs' presentation is inadequate to prove duty, breach, and legal cause/scope of the duty elements of the duty/risk analysis. Accordingly, the trial court's determination as to negligence against Merit Mortgage is not supported by the record.

Neither does the record indicate that Merit Mortgage is liable due to a breach of a contractual obligation. "The Mortgage Loan Origination Agreement"[2] indicates

---

[2] *See* La.R.S. 6:1098, which indicates that nature of the mortgage broker/borrower relationship be described as follows:

§ 1098. Residential mortgage loan brokerage contracts

A. Each residential mortgage loan brokerage contract shall be in writing and signed by all contracting parties. The mortgage broker shall retain a signed copy of the residential mortgage loan brokerage contract in the customer's file.

B. The mortgage broker must provide the prospective borrower with a written "Mortgage Loan Origination Agreement" no later than three days after the initial loan application date. The written agreement shall describe the nature of the mortgage broker's relationship with the borrower and the manner in which the mortgage broker is compensated for his services. Such disclosures may be incorporated into the brokerage contract or provided in a separate document.

C. The written disclosures provided to the borrower shall also contain the following information as applicable:
(1) The name, address, and telephone number of the originator.
(2) The name, address, and telephone number of the residential mortgage lender by whom the originator is supervised.
(3) The name, address, and telephone number of the residential mortgage lender by whom the originator is employed.

the following under the "Services to be performed" section:

> Broker agrees to perform all mortgage loan broker services normally and customarily performed in connection with the origination of mortgage loans but not limited to the Services described below. Broker and Borrower both agree that under this agreement, Broker is providing mortgage loan brokering services services [sic] on behalf of Borrower as Borrower's agent.
>
> (a)  taking information from the borrower and fil[l]ing out the application;
> (b)  analyzing the prospective borrower's income and debt and pre-qualifying the prospective borrower to determine the maximum mortgage that the prospective borrower can afford;
> (c)  educating the prospective borrower in the home buying and financing process, advising the borrower about the different types of mortgage loan products and demonstrating how closing costs and monthly payments would vary under each product;
> (d)  collecting financial information (tax returns, bank statements) and other related documents that are part of the application process;
> (e)  initiating/ordering VOEs and VODs;
> (f)  initiating/ordering requests for mortgage and other mortgage loan verifications;
> (g)  initiating/ordering appraisals;
> (h)  initiating/ordering inspections and engineering reports;
> (i)  providing disclosures (truth and lending, good faith estimate, others) to the borrower;
> (j)  assisting the borrower in understanding and clearing credit problems;
> (k)  maintaining regular contact with the borrower, realtors and mortgage lender, between application and closing to apprise them of the status of the application and to gather any additional information as needed;
> (l)  ordering legal document;
> (m)  determining whether the property was located in a flood zone or ordering such service; and
> (n)  participating in the mortgage loan closing.

The delineated services are not applicable to the plaintiffs' claim regarding advice as to the use of an escrow account in this initial contract with the builder. Furthermore, the plaintiffs' lack of specific evidence is again problematic in considering the expansive services statement opening the section. The statement indicates that the "[b]roker agrees to perform all mortgage loan broker services

normally and customarily performed in connection with the origination of mortgage loans[.]" Again, the record leaves the court without information as to what services are "normally and customarily" performed by a mortgage loan broker in this context.

Whether based on its determination as to negligence on the part of Merit Mortgage or based on its reference to the contractual relationship between Merit Mortgage and the plaintiffs, the trial court's ruling was in error. Accordingly, we reverse the judgment entered against Merit Mortgage.

Discussion of the remaining assignments of error is pretermitted due to the above resolution.

**DECREE**

For the foregoing reasons, the judgment of the trial court, insofar as it was entered against the appellant, Merit Mortgage, LLC, is reversed. The plaintiffs' claim against Merit Mortgage is dismissed. In all other respects, the judgment is affirmed. All costs of this proceeding are assigned to the appellees, Benny Ray Barnes and Ora Mae Barnes.

**REVERSED IN PART AND RENDERED.**

BENNY RAY BARNES, ET UX

VERSUS

JOHN L. BASS, ET AL.

THIBODEAUX, Chief Judge, dissenting.

The majority concludes that the record is insufficient from an evidentiary standpoint to establish what duty is owed to a plaintiff by a mortgage broker. General fault principles are unhelpful, the majority says, in the context of this particular case because the facts are lacking to gauge the correct practices or standards associated with a mortgage broker's/borrower's relationship. I disagree.

Louisiana Revised Statutes 6:1082 articulates the purpose of the Residential Mortgage Lending Act. Its purpose is "to protect consumers in the most important financial investment most will make, the purchase of a home, by requiring the licensing and certification of residential mortgage lenders." By recognizing that "unqualified individuals may injure or mislead the public," the Residential Mortgage Lending Act seeks "to promote the safety and welfare of the people of the state by providing for regulatory oversight and by establishing educational requirements." Under the act, a mortgage brokerage contract must be in writing and "shall describe the nature of the mortgage broker's relationship with the borrower." La.R.S. 6:1098.

The Mortgage Loan Origination Agreement entered into between Mr. and Mrs. Barnes and Merit Mortgage, in my view, adequately describes the nature of

Merit Mortgage's relationship with Mr. and Mrs. Barnes and provides specific contractual duties. Thus, Mr. and Mrs. Barnes may recover under breach of contract principles or under delictual fault principles. Section (c) of the contract states that the mortgage broker is responsible for "educating the prospective borrower in the home buying and financing process . . . ." Merit Mortgage was also responsible for "providing disclosures (truth and lending, good faith estimate, others), to the borrower." Section (i). Moreover, Merit Mortgage had an obligation of "maintaining regular contact with the borrower, realtors, and mortgage lender, between application and closing to apprise them of the status of the application and to gather any additional information as is needed." Section (k). Merit Mortgage was aware that the loan was pending, i.e., on hold, on October 24, 2001. Mrs. Buckner, the sole owner of Merit Mortgage, knew on that day that the loan may be a problem because of the contractor's questionable past personal and professional record. Yet, she failed to advise Mr. and Mrs. Barnes not to pay the downpayment or to alternatively place the downpayment into an escrow account. Certainly, the trial judge was justified in concluding that Mrs. Buckner had failed to honor her duty of gathering any additional information by not ascertaining the reason for the disapproval of the loan. Further, a contractual duty of the mortgage broker existed to "educate the prospective borrower." Mrs. Buckner should have educated the borrowers by advising them to perhaps place the money in escrow. Mr. and Mrs. Barnes were unsophisticated buyers and these very disclosures under Section (i) of the contract should have been provided to them.

Additionally, Merit Mortgage was acting as the mandatary for Mr. and Mrs. Barnes. Consequently, Merit Mortgage was responsible for the loss which Mr. and Mrs. Barnes sustained as a result of Mrs. Buckner's failure to perform.

2

La.Civ.Code art. 3001. Mrs. Buckner's duties to perform were delineated in the Mortgage Loan Origination Agreement. It was thus unnecessary and irrelevant to submit proof of the "customary" duties of a mortgage broker.

Finally, liability may be imposed under the general delictual articles of our Civil Code, Articles 2315, 2316, and 2317. While there is no specific statutory authority delineating the duty of a mortgage broker, we can certainly craft the duties owed based on these general delictual articles and Article 3001 of our Civil Code. Failure to do so, in my view, disregards the expansiveness of Article 2315 and our delictual liability rules in Louisiana. *See, e.g., Langlois v. Allied Chemical Corp.*, 258 La. 1067, 249 So.2d 133 (1971).

For the foregoing reasons, I respectfully dissent.