291 So.2d 865 (1974)
Lanual D. EVANS, Plaintiff Appellee Appellant,
v.
LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY, and State Farm Mutual Automobile Insurance Company, Defendant-Appellant, Defendant-Appellee.
No. 4472.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1974.
Rehearings Denied April 11, 1974.
*866 Cotton & Bolton by W. D. Cotton, Rayville, for defendant-appellant.
Robert D. Lee and Cecil Gill Smith, Jr., Natchez, Miss., for plaintiff-appellee-appellant.
James A. Bolen, Jr., Alexandria, Gist, Methvin & Trimble by DeWitt T. Methvin, Jr., Alexandria, for defendant appellee.
Before HOOD, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Defendant Louisiana Farm Bureau Mutual Insurance Company appeals the judgment extending coverage under its auto liability and medical payments policy to a driver (Virgil Dale White) who allegedly drove without permission of Farm Bureau's insured owner Mrs. Cyrus W. Wiley. Farm Bureau further contends that plaintiff Lanual D. Evans assumed the risk of riding with a drunk driver, Virgil Dale White. We find manifest error in the trial court's rejection of the second defense.
At about 4 a. m. on July 31, 1971, White was driving Mrs. Wiley's new Dodge Charger (insured by Farm Bureau) at an excessive rate of speed and generally in a negligent manner. Evans was a guest passenger. At a point where the highway makes a slight turn to the left, White failed to turn. Just before impact with a truck parked upon the shoulder well off the highway, White saw the parked truck and turned left. The right side of the Charger struck the left rear of the parked truck such a blow that the Charger broke into two parts. The front end of the Charger traveled 438 feet and came to rest on the right side of the highway and the rear portion of the Charger was found on the left side of the highway. The investigating officer testified that the highway was dry and found no obstructions to visibility.
The trial court found that the several youths involved in the preliminaries leading to the accident were engaged in a frolic celebrating the Soybean Festival in Jonesville on July 30, 1971. The evidence supports the trial court's finding ". . . that `all hands' were pretty well `oiled' at one time or another during the day. There is no question that White was drinking at the time of the accident." Tr. 208.
White admitted that he was juiced up himself and that there was no way of knowing how much beer he consumed the day of the Festival, but gave the impression that it was substantially more than twelve cans. He testified that he stopped drinking at midnight when the bars closed. At the time of the accident, White and Evans were on their way to a party looking for more beer.
The trial court rejected the defense that Evans assumed the risk of riding with a drunk driver. This was based on the finding that Evans had not been a part of the same drinking party with White; that Evans had no way of actually knowing how much White had drunk; and that White had ridden a motorcycle and performed in a rather normal manner during the hour and a half or more that White and Evans were together before the accident.
*867 The accident occurred after White had driven some seven or eight miles from a Jonesville restaurant where White, Evans and a motorcyclist named Nugent stopped for hamburgers. Nugent decided to go to the drinking party with White and Evans but followed along on his motorcycle. Nugent testified that there was nothing unusual about White's driving, but testified that after they turned south, White "gradually pulled away from Nugent's motorcycle." Nugent could still see the taillights of the Charger when the Charger exploded on impact.
We find manifest error in the trial court's conclusion that Evans did not know that White was under the influence of intoxicants. The trial court did not take note of the fact that Evans himself was under the influence of intoxicating beverages or alcohol. At Tr. 90, Evans admitted that he had four or five beers, although he really didn't know how many. At Tr. 96, Evans acknowledged that he had been drinking beer throughout the evening. Evans' treating physician, Dr. Bruce M. Kuehnel, saw Evans at 6:15 a. m. on July 31st and noted in his report (Tr. 163, page 5 of exhibit 7-A) and in his deposition (Tr. 156, pages 7, 27) that at that time Evans "smells strongly of alcohol." Nugent was with Evans and White for an hour and a half before the accident. At Tr. 109, 111, Nugent admitted that he had testified that he could tell that White had been drinking.
At Tr. 65, White testified that Evans ". . . was either asleep or something, I do not believe that he was awake. . ." at the time of the accident. (Emphasis added.) The "or something" and the context of the testimony and out" while on the way to find a new drinking party.
The trial court found (Tr. 209) "that Evans had fallen to sleep shortly after entering the car; hence he did not know of White's recklessness." This finding ignores the well documented finding that White was drunk; that Evans was with White for at least an hour and a half before Evans made the 4 a. m. decision to accompany White in search of another drinking party; and that Evans' drinking affected his conclusion that White was fit to drive.
Where the driver of a vehicle is shown to be intoxicated, and the intoxication is a contributing cause of the accident, the guest passenger assumes the risk and is guilty of contributory negligence if he knows or should have known that the driver's faculties are materially impaired because of the driver's intoxication. Foy v. Ed. Taussig, Inc., 220 So.2d 229 (La.App. 3 Cir. 1969); Brown v. Collins, 223 So.2d 453 (La.App. 3 Cir. 1969).
Evans' injuries are attributable in part to his lack of concern for his own safety and his assumption of the risk of riding with a drunk driver. This bars his claim for damages from the insurer of the driver of the Dodge Charger.
We next consider Evans' claim for $2,000 in medical payments provided by Farm Bureau's coverage of "any . . . person who sustains bodily injury, caused by accident while in or upon . . . the automobile while being used by or with the permission of the named insured or spouse."
The trial court expressly rejected Mrs. Wiley's testimony that she prohibited her children from allowing others to drive her cars. Her children testified that she constantly instructed them not to allow others to drive her vehicles. But it was established that Mrs. Wiley's son Wayne had allowed White to drive Mrs. Wiley's pickup truck on several occasions. On July 30, Wayne expressly allowed White to drive the Dodge Charger for a 30 mile trip. There is some indication that Wayne became angry with White because White kept the Charger too long, and that Wayne prohibited White from driving the Charger thereafter. This line of testimony palls into insignificance when compared to *868 Wayne's testimony (Wayne Wiley's deposition, Tr. 170, pages 54, 56) when he was called upon to explain differences in his testimony at the deposition and at a revocation hearing held August 26, 1971. The revocation hearing concerned Wayne's friend White's activities and White's permission to use the Dodge Charger when the accident occurred. Farm Bureau's counsel suggested that Wayne might want to take the Fifth Amendment to avoid answering. Wayne then refused to answer certain questions on the grounds that he might be incriminated. Later at Tr. 56 Wayne expressly stated that he did not remember whether or not he terminated White's permission to use the Charger.
Although most of Mrs. Wiley's testimony and that of her children is in the record by deposition, there is constant reference throughout the depositions to a revocation hearing involving the facts of this case which hearing was before the trial judge who presided at this trial. We fail to find manifest error in the trial court's express rejection of Mrs. Wiley's credibility, and his implied rejection of the credibility of her children. Farm Bureau has not established manifest error in the finding that Mrs. Wiley allowed her son Wayne to give implied consent to White to drive the car when the accident occurred.
On this factual determination we distinguish the line of cases cited by Farm Bureau, some of which are discussed in Coco v. State Farm Mutual Automobile Insurance Co., 136 So.2d 288 (La.App. 3 Cir. 1961); 4A.L.R.3d 66.
Evans established that his medical expenses exceeded the $2,000 coverage in the Farm Bureau policy. The trial court judgment awarding plaintiff Evans $2,000 in medical payments to be paid by Farm Bureau together with interest from date of demand is affirmed. The balance of the award against Farm Bureau is set aside and reversed.
In the judgment signed in this case the trial court assessed Farm Bureau with the costs of court incurred in a consolidated case filed by Evans against Continental Insurance Company. The trial court dismissed Evans' suit against Continental, but there is no showing in this record that a judgment of dismissal has been signed in the consolidated case. If there has been a judgment signed in that case, there has been no appeal from that dismissal. Since Farm Bureau was not a party to that suit, Farm Bureau cannot be taxed with costs of that suit. Insofar as the judgment taxes Farm Bureau with the costs of court in the suit against Continental Insurance Company, it is set aside and reversed.
Evans alternatively contended that he was entitled to medical pay provisions under his liability insurance policy with defendant State Farm Mutual Automobile Insurance Company. This claim was properly dismissed by the trial court on finding that Evans was entitled to the medical payment provisions under the Farm Bureau policy. The policy issued by State Farm to Evans specifically provided for subrogation by Evans to State Farm of the "rights of recovery" which Evans "may have against any person or organization." There was no showing in the record that Evans applied to State Farm for the medical expense coverage or offered to execute the necessary subrogation papers in connection therewith.
Evans answered the appeal seeking to increase the $8,234.55 awarded as medical expenses and damages. Since his claim for damages has been denied, we will not review the extent of his injuries.
The trial court judgment is amended to reduce the award in favor of plaintiff Lanual D. Evans and against defendant Louisiana Farm Bureau Mutual Insurance Company to the sum of Two Thousand and no/100 ($2,000.00) Dollars, together with legal interest thereon from date of judicial demand until paid. Costs of the trial of this case are taxed to defendant Farm Bureau. Costs of this appeal are taxed half to plaintiff Evans and half to defendant *869 Farm Bureau. Insofar as the trial court judgment taxed Farm Bureau with the costs of court in suit number 16,533 on the docket of the 7th Judicial District Court, Parish of Concordia, the trial court judgment is reversed and set aside.
Amended and affirmed, in part; in part reversed and rendered.
DOMENGEAUX, J., concurs in part and dissents in part and assigns written reasons.
DOMENGEAUX, Judge (concurring in part and dissenting in part).
I disagree with the majority opinion in two particulars only: First, to the extent that it finds manifest error in the trial court's conclusion that the plaintiff Evans did not assume the risk by riding in the vehicle with Virgil Dale White; and Second, in assessing half of the costs of this appeal to plaintiff Evans. Concerning assumption of risk, the trial judge stated:
"Defendants also raise the defense of assumption of the risk by Evans. That is that Evans got into the car with White knowing that White was drinking and made no complaint when White began to drive recklessly and at an excessive rate of speed. Frankly, this court, feeling that there was a lot of drinking going on by all of the people in this party, considered this defense as being much more meritorious than the claim that White had no permission to drive the car. However, upon close study of the testimony I find that the evidence shows first that Evans had not been a part of the same drinking party that White was a part of; hence he had no way of actually knowing how much White had drunk. Both Evans and his companion, Nugent, testified that White rode a motorcycle and performed in a rather normal manner shortly before leaving the service station with Evans on this trip that ended in the accident. Evans and White both testified that Evans had fallen to sleep shortly after entering the car; hence he did not know of White's recklessness. Therefore, this defense must also be rejected."
A review of the testimony of Virgil Dale White, the plaintiff Evans, J. W. Nugent, and Lynn White, presumably believed by the trial judge, is sufficient to preclude a finding of assumption of risk by the plaintiff. This is a fact question and I find no manifest error in the trial judge's conclusions.