295 So.2d 574 (1974)
Jennifer Suzette DEWESE, Plaintiff-Appellee,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant-Appellant.
No. 4529.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1974.
Rehearing Denied June 26, 1974.
Writ Refused September 13, 1974.
Welton P. Mouton, Jr., Lafayette, for defendant-appellant.
Domengeaux & Wright by Bob F. Wright, Lafayette, for plaintiff-appellee.
Before CULPEPPER, MILLER and WATSON, JJ.
*575 WATSON, Judge.
Plaintiff, Jennifer Suzette DeWese, was a guest passenger in a Chevrolet automobile driven by Donald J. Adair, and filed this suit to recover damages for injuries she received in an accident on June 25, 1970, when the automobile ran off the road. The trial court gave judgment in favor of the plaintiff and against defendant, Hartford Accident and Indemnity Company, the liability insurer of the automobile, in the amount of $76,712.85.
The primary defense urged by defendant at the trial was that Miss DeWese was contributorily negligent and/or had assumed the risk of driving with Mr. Adair because of his intoxicated condition. The trial court found as a fact that Mr. Adair "... was not intoxicated to the point of not being able to drive a vehicle in a prudent manner." (TR. 177). Although Mr. Adair apparently fell asleep at the wheel of the automobile, this fact was attributed to lack of sleep during the preceding day rather than to drunkenness. Thus, the trial court found as a fact that Miss DeWese was not contributorily negligent and allowed her to recover.
The trial court found that plaintiff sustained "... a compression fracture of D-12 vertebrae as well as a resultant Schmorl's Node ..." (TR. 180) and awarded the sum of $35,000.00 for this injury. Dr. Marvin F. Miller, a psychiatrist, testified that plaintiff suffered a depressive reaction as a result of the accident which causes her to fear riding in automobiles and the court gave $2,500.00 for this condition. An award of $10,000.00 was made for plaintiff's pain and suffering. Plaintiff is a physical education teacher and was awarded $9,450.00 for loss of income. On the basis of testimony that plaintiff is now unable to pursue her profession as a physical education instructor, the court awarded plaintiff $17,400.00 for loss of future income. She was also awarded $450.00 for the psychiatric treatment needed for her depressive reaction, $1,359.94 for hospital bills, and $552.91 for other incidental expenses occasioned by the accident.
Defendant, Hartford Accident and Indemnity Company, has appealed from the adverse judgment of the trial court. Defendant's counsel, in brief, has made two assignments of error on the part of the trial court as follows:
"1. The trial court committed manifest error in failing to take into consideration the obvious intoxication of the driver and the fact that the guest passenger knew or should have known of the driver's intoxication to an extent that she was guilty of independent negligence and assumed all of the risks involved.
"2. Alternatively, the award made by the trial court judge to plaintiff was manifestly erroneous and grossly in excess of previous awards for similar injuries."
Contributory negligence is, of course, an affirmative defense which must be proved by a fair preponderance of the evidence. Cavalier v. City of New Orleans, 273 So.2d 303 (La.App. 4 Cir. 1973); writ refused, La., 275 So.2d 781 (1973). The existence of contributory negligence is a question of fact to be decided by the trier of fact. Odom v. Hooper, La., 273 So.2d 510 (1973).
The doctrine of assumption of risk urged by defendant was defined by the Louisiana Supreme Court in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), as follows:
"Usually, the assumption of risk doctrine will apply where the nature of the relationship of the parties appears to exact consent from the one injured to be exposed to possible harm. In such situations the plaintiff understands the risk involved and accepts the risk as well as the inherent possibility of damage because of the risk. There is some authority for rejecting assumption of risk in *576 cases which do not involve negligence, but the majority view is that assumption of risk is a defense to strict liability. A plaintiff who with full knowledge and appreciation of the danger voluntarily exposes himself to the risks and embraces the danger cannot recover damages for injury which may occur." 249 So.2d 140
Assumption of risk is also an affirmative defense which must be established by a preponderance of the evidence. Langlois v. Allied Chemical Corporation, supra.
As to the second assignment of error there is no question as to the "much discretion" given the trier of fact in assessment of damages.
Our review of the evidence, as set forth hereinafter, shows no manifest error on the part of the trial court in deciding the factual questions presented and the decision of the trial court is affirmed.
Sergeant Frank Guidry of the Louisiana State Police testified that he had been an employee of the State Police for 14 years and investigated the accident in question. He received notice of the accident at approximately 12:50 A.M. and proceeded to the scene which was near the Judice community in Lafayette Parish or about one and six-tenths of a mile from the intersection of Highways 724 and 342. When he arrived at the scene, he found that a 1970 Chevrolet had been traveling south on the blacktop road; had failed to negotiate a very sharp curve or turn; had struck an embankment on the south side of the blacktop and entered a pasture. The car was approximately 50 or 60 feet into the pasture and the occupants were in an ambulance leaving the scene. The car was completely demolished. Sergeant Guidry then proceeded to the hospital and arrived there approximately two hours after the accident. At the hospital he talked to Jennifer Suzette DeWese and the operator of the automobile, Donald J. Adair. Sergeant Guidry testified that Mr. Adair stated he was not familiar with the area and hadn't seen any sign of the curve. He smelled of intoxicants and said that he had had a couple of drinks but was very prompt in his answers to the questions and spoke clearly. His answers were coherent and his attitude was cooperative. His speech was good. No blood alcohol content test was administered. Sergeant Guidry testified that a glass he found in the car smelled of alcohol. He stated that Miss DeWese was vomiting and complaining of pain in her back when he saw her but seemed perfectly sober.
Donald J. Adair testified that he is now married to plaintiff, Suzette DeWese; that they were married August 21, 1971; that he is now 26 years of age; that he was driving the Chevrolet automobile on the night in question; that it was a company car leased by his employer, Darrel DeMoss Photographers, but that there were no restrictions on his use of the automobile. He stated that he had gotten up at 4:00 A.M. on the morning of the accident and arrived in Lafayette at approximately 3:30 P.M. He then got together with some friends, Barbie and Allen Neighbors, and went with them to the apartment of Don Hinners. They had a couple of beers and then went to a pizza and poorboy place on Pinhook Drive where they ate. Miss DeWese was called from the eating place by Mrs. Neighbors and then he talked to her. They picked her up at her home in the Neighbors' automobile between 9 and 9:30 P.M. After picking up Miss DeWese, Mr. and Mrs. Neighbors drove Mr. Adair and Miss DeWese back to the pizza place where they picked up Mr. Adair's car. They then proceeded to the Neighbors' apartment at the University Apartments. The four visited there until 10:30 or 10:45 P.M. and then went to a small bar south of town, Stutes' store. Mr. Neighbors, Mr. Hinners and Mr. Adair then used the bowling machine at the bar while Mrs. Neighbors and Miss DeWese visited at a table. The men had a beer or two at the bar and all left at the same time. Mr. Adair opened the door for Miss DeWese, put her in the automobile and they took a *577 drive. Mr. Adair stated that he had had several beers and was feeling very content at that point. However, he had no hesitancy about driving his automobile. Mr. Adair stated that he did not recall the accident itself, but that he must have fallen asleep at the wheel of the automobile. He did not recall ever being on the road where the accident occurred prior to the accident. He was taken to the hospital with a cut on his scalp, a badly bruised right eye, a sore right shoulder and a sore low back. Mr. Adair testified that he had drunk nothing but beer during the evening. He testified that he had gone to bed at 10:30 P.M. the night before and gotten up at 4:00 A.M., giving him 5 and ½ hours sleep.
Donald Len Hinners testified that he was 24 years old and a petroleum engineer with Signal Oil and Gas. He stated that he first met Suzette DeWese on the night of the accident but had known Donald Adair for perhaps two years before that. He stated that he did not remember too much about the evening in question. He did testify that he did not ever remember Barbie Neighbors drinking much and she had one or two beers at most on the evening of the accident.
Dr. Margaret Faye Longo, a surgeon in the city of Lafayette, was qualified as an expert in the field of general surgery. She testified that she first saw Mrs. Adair, then Jennifer Suzette DeWese, on June 25, 1970, in the emergency room of Lafayette General Hospital following an automobile accident. She saw her between one and three A.M. The records of the hospital indicated that Miss DeWese was admitted to the emergency room at 1:30 A.M. and to the hospital at 3:45 A.M. She complained of headache, mid-back pain and nausea. Dr. Longo found multiple abrasions and contusions as well as a lump and pain in the lower thoracic area. X-rays showed a compression fracture of T-12 vertebra. She also saw Mr. Adair that morning at the hospital. She testified that, by her history and clinically, Mr. Adair was intoxicated, but testified that she did not specifically recall having seen him in the emergency room. She stated that even though she put on her report that he was clinically intoxicated, she did not put down any impression about the degree of intoxication. She testified that this intoxication was not necessarily such as would have made Miss DeWese skeptical of his ability to drive an automobile.
Mr. Allen Hayden Neighbors testified that he is a military officer and had known Don Adair since 1964 and Suzette DeWese for two or three years. He stated that he was with both of them the night of the accident; he recalled going to the Raven on Pinhook; eating pizza and drinking beer; picking up Suzette; and then going to Fernand Stutes' store. They stayed at Stutes' store an hour or two; played the coin operated bowling machines; and drank a few beers. They said good night in the parking lot; Mr. Hinners and he and his wife left in his car; Don and Suzette left in Don's car. He stated that he had been a fraternity brother of Don in college and saw him frequently. He stated that he would have had no hesitation in riding home with Don on the evening of the accident and did not recall his behavior as being out of the ordinary. He stated that he did not believe that Don Adair was drinking as much beer as Don Hinners and himself.
Mrs. Barbie Allen Neighbors testified that she recalled the evening in question; that there was nothing unusual about Don Adair's behavior; and that she would have had no hesitation about riding in the car with Mr. Adair.
Jennifer Suzette DeWese Adair testified that she was 26 years old. She first met Don Adair while she was teaching at Sunset High School and he was working for DeMoss Studios. She had been in North Little Rock, Arkansas at a wedding on the day of the accident and arrived back home in Lafayette around 5:30 or 6:00 P.M. Between 8 and 8:30 P.M., Barbie Neighbors called and she spoke with her and *578 then with Don Adair. Don asked if he could pick her up and she agreed. He and Barbie and Allen Neighbors picked her up around 9:30 P.M. and they returned to the Neighbors' apartment and picked up Don's car and then went to Fernand Stutes'. Miss DeWese stated that she had a draft beer at Stutes' place. She spent most of her time talking to Barbie Neighbors because she had not seen her for quite a while. She noticed nothing unusual about Donald Adair's behavior that evening. He opened the door for her and assisted her into the automobile when they left Stutes' and they drove around and talked for a while. She recalled passing Judice High School, then felt the car accelerate, saw the curve and the fence; she did not have a clear memory of the actual accident. She ended up after the accident under the dashboard on the right hand side. She crawled over Don, who was unconscious, and out the left hand door and then walked to a house they had passed up the road. She called the operator and asked for an ambulance. She was taken to Lafayette General Hospital in one ambulance and Mr. Adair was taken in another. Miss DeWese stated that she had had one past experience with dating a drunk and that she did not go home with her date on that occasion because of his intoxication. On the occasion of the accident she was not aware that Don had been drinking enough to be of any concern.
Mr. Carrol Dugas, a claims manager for the Hartford Insurance Group, stated that he took a statement from Miss DeWese at Lafayette General Hospital on June 29, 1970, at approximately 10:30 A.M. He stated that he asked questions of Miss DeWese and wrote down her answers. He stated that she was fairly alert but that he could tell she was in pain. (Dr. Longo testified that she would not have given permission for this if she had been asked.) She told Mr. Dugas that she was a guest passenger in the Chevrolet and that the accident occurred southwest of Lafayette on a parish road that she thought was the Judice Road. She stated that the speedometer registered 85 miles an hour just prior to the accident. She stated that Don seemed to be upset about something and had had very little sleep the night before, only a couple of hours. She said he had had quite a few beers but that she did not know how many. She had only had one and a half beers. She asked to drive and he would not permit her to drive or stop the car. At the time the car was going 85 miles per hour, she thought he had passed out or gone to sleep and his foot had pressed on the accelerator. Mr. Dugas testified that Miss DeWese refused to sign the statement.
As the trial court pointed out in its reasons for judgment, the only witness who testified that Mr. Adair was intoxicated was Dr. Longo. She testified that her statement did not imply that his intoxication was such as to indicate to an observer earlier in the evening that he did not have control of his mental and physical faculties. Sergeant Guidry, Mr. Hinners and Mr. and Mrs. Neighbors all testified that Mr. Adair did not appear noticeably intoxicated. Dr. Longo did not make a blood test of Mr. Adair; Dr. Longo stated:
"... this was a clinical impression at the time, and I did not put down mildly intoxicated, moderately intoxicated, severely intoxicated. I didn't grade it." (TR. 343).
Defendant-appellant in brief relies heavily on the case of Jones v. Continental Casualty Co. of Chicago, Ill., 246 La. 921, 169 So.2d 50 (1964). In the Jones case, a blood test showed an alcoholic content sufficient to establish that the driver's mental and physical faculties were materially impaired at the time of the collision. The Supreme Court stated that the passengers knew or should have known that the driver was intoxicated. To quote "... it is unreasonable to say that his guests did not realize he was intoxicated." 169 So.2d 53. That is not the case here. Miss DeWese and Mrs. Neighbors were both sober and *579 both testified that Mr. Adair was not noticeably intoxicated. Even though Mr. Neighbors and Mr. Hinners were also drinking beer, the evidence does not establish that any of the three men were intoxicated to the point of not being able to drive in a prudent manner. Sergeant Guidry, who talked to Mr. Adair following the accident, stated that he could not determine the extent of Mr. Adair's intoxication. He did not give a blood alcohol content test or a breathameter test. Mr. Adair's speech and understanding were not impaired. There is no evidence in the record to show that Mr. Adair was so intoxicated that Miss DeWese knew or should have known that he was intoxicated.
Counsel for defendant-appellant contends that this case falls under the rule stated in Broussard v. Broussard (La.App. 1 Cir. 1956) 84 So.2d 899, as follows:
"The court must be alert to protect insurers in circumstances where close family relationship or association tend to ally the sympathy of the insured with those to whom the insurer may be liable; and, normally, in evaluating credibility such factors are properly taken into account." 84 So.2d 903.
This rule is quoted from a case where the plaintiff was the brother of the insured; it would apply to a husband-wife situation as in the present case. We find no indication that the trial court overlooked this principle of law.
However, the fact Mr. and Mrs. Neighbors and Mr. Hinners are friends of plaintiff and Mr. Adair does not justify disregarding their testimony and does not require assuming that they testified falsely. On the contrary, in answer to questioning by defense counsel on whether they had been impressed prior to trial with the importance of minimizing Mr. Adair's intoxication, Mr. Hinners stated that they had not been told that by plaintiff's counsel. Mrs. Neighbors testified that she was instructed only to remain calm and tell the truth; specifics of their testimony were not discussed. It appears that the witnesses for plaintiff were well educated, literate, responsible people; we find no reason why the trial court should not give weight to their testimony.
The defendant insurer is suggesting basically that this court reject the testimony of Mr. Neighbors, Mrs. Neighbors, Mr. Hinners and Sergeant Guidry, not to mention plaintiff and Mr. Adair, and accept that of Dr. Longo, as interpreted by defendant. The trial court has the task of weighing and evaluating the testimony of the witnesses. The trial judge heard the witnesses; we must rely largely on his judgment as to their credibility. We must also determine whether there was a reasonable evidentiary basis for his factual conclusions. Canter v. Koehring Company, 283 So.2d 716 (La., 1973). We find no manifest error in the trial court's conclusions in this case.
Defendant emphasizes the statement taken by Mr. Dugas while Miss DeWese was in the hospital, given while under sedation and not signed. Apparently the trial court placed small weight on this evidence. Here again the trier of fact is in a better position to evaluate such evidence and there is certainly no manifest error.
Defendant cites and relies on our recent decision in Evans v. Louisiana Farm Bureau Mutual Ins. Co., 291 So.2d 865 (La. App. 3 Cir. 1974). Evans is factually different from the present case in that the plaintiff there was under the influence of alcohol and was embarked on a general drinking spree with the driver, White. In fact, they were searching for more beer when the accident occurred. In the present case, Miss DeWese consumed at most a beer and a half and was able, in our opinion, to make a sober judgment that Mr. Adair's faculties were not materially impaired. See Evans, 291 So.2d at 867. Her judgment was supported by that of the other witnesses who saw Adair and were in his company at the time. Again, we *580 cannot say that the trial court manifestly erred in accepting and relying on the testimony of these witnesses.
As to the quantum awarded for Miss DeWese's injuries, we find that there is evidence in the record to substantiate each item of damages awarded, and we find no abuse of the trial court's much discretion in making the award. LSA-C.C. art. 1934; Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); and Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).
For the foregoing reasons, the decision of the trial court is affirmed.
Affirmed.